# EXHIBIT B

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
                                                                NOT ORIGINAL DOCUMENT
                                                                12/04/2020 10:43:35 AM
                                                                38265-6

CASE NO.                                                JEFFERSON CIRCUIT COURT
                                                        BUSINESS COURT DOCKET


RENAISSANCE/THE PARK, LLC d/b/a                         PLAINTIFF
RENAISSANCE FUN PARK
101 N. 7th Street
Louisville, Kentucky 40202

v.                          **COMPLAINT**

THE CINCINNATI INSURANCE COMPANY                        DEFENDANT
6200 S. Gilmore Road
Fairfield, Ohio 45014

    Serve: Kentucky Secretary of State


    Plaintiff, Renaissance/The Park, LLC, for its claims against Defendant, The

Cincinnati Insurance Company ("**Cincinnati**"), states as follows:

## I.    **INTRODUCTION**

    1.      This action arises out of Defendant's failure to provide insurance coverage.

The Coronavirus pandemic ("**COVID-19**") and/or the resulting response by state

government have caused direct physical loss and/or physical damage to Plaintiff's

property and have interrupted Plaintiff's business. Plaintiff is entitled to reimbursement

for these losses and/or damages pursuant to the contract of insurance that Plaintiff

procured from Defendant.

## II.    **JURISDICTION**

    2.      This Court has jurisdiction over this matter because the amount in

controversy exceeds this Court's jurisdictional minimum. Personal jurisdiction is proper

pursuant to KRS 454.210(2)(a)(7).

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000001 of 000016

NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

3        Venue is appropriate in Jefferson County because the Plaintiff's business and property are located in Jefferson County.

4.        This matter is properly before the Jefferson County Business Court pursuant to BCR 2.1(m).

## III.    THE PARTIES

5.        Renaissance / The Park LLC, d/b/a Renaissance Fun Park, is a Kentucky LLC with its principal place of business at 101 North 7th Street, Louisville, Kentucky 40202.

6.        At all times relevant hereto, Plaintiff has owned and operated a recreational facility in the Louisville metropolitan area (the **"Renaissance Fun Park"**). The facility is located at 201 Park Place Drive, Louisville, Kentucky 40243, and it offers to the public-at-large, year-round, Go-Kart, Laser Tag, Mini-Golf, and Arcade activities, along with food and drink service.

7.        Defendant is, and at all times relevant hereto has been, an insurance company writing insurance policies and doing business in the State of Kentucky, capable of suing and being sued in the courts of this state. Defendant is a foreign corporation organized, incorporated, and existing under the laws of the State of Ohio, with its principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014.

## IV.    FACTUAL BACKGROUND

8.        To protect its business in the event that it suddenly had to suspend operations for reasons outside of its control, Plaintiff purchased insurance coverage from Defendant as set forth in The Cincinnati Insurance Company's Building and Personal Property Coverage Form (attached hereto as **Exhibit A**) and Business Income Without

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000002 of 000016

2

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

EXtra EXpense Coverage Form (attached hereto as **Exhibit B**) (these two forms, together, constitute the applicable "**Policy**").

9.    In return for the payment of a premium, Cincinnati issued Policy No. EPP0100379 to Plaintiff, for a policy period of July 30, 2018 to July 30, 2021.

10.    Plaintiff has performed all of its obligations under Policy No. EPP0100379, including the payment of premiums.

11.    The Covered Property, for the purpose of Plaintiff's instant claim, is the aforementioned recreational facility located at 201 Park Place Drive, Louisville, Kentucky 40243—i.e. the Renaissance Fun Park.

12.    The Policy provides up to $1,000,000 in coverage for the Renaissance Fun Park, 201 Park Place Drive, Louisville, Kentucky 40243.

## Policy Terms

13.    Generally speaking, at times insurance is sold on a specific peril basis, where coverage is limited to risks of loss that are specifically listed (e.g. hurricane, earthQuake, etc.). Many property policies sold in the United States, however, including those sold by Cincinnati, are "all-risk" property damage policies. These types of policies cover all risks of loss eXcept for risks that are eXpressly and specifically eXcluded.

14.    Under the heading "Covered Causes of Loss," Defendant agreed to pay for "direct 'loss' unless the 'loss' is excluded or limited" in the policies.

15.    The Policy defines "loss" as "accidental physical loss **or** accidental physical damage."

16.    In the Policy, under the heading "Business Income" coverage, Cincinnati agreed to pay for its insureds' actual loss of Business Income sustained due to the

3

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000003 of 000016

NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

necessary suspension of operations during the "period of restoration" caused by direct "loss" to property at the covered premises.

17. "Suspension" is defined to mean the slowdown or cessation of business activities, such that all or part of the premises is rendered untenable.

18. "Period of restoration" is defined to mean the period of time that begins at the time of direct loss and ends on the date when the property should be repaired with reasonable speed and similar quality.

19. "Business Income" is defined to mean net income (net profit or loss before income taxes) that would have been earned or incurred and continuing normal operating expenses sustained, including payroll.

20. The Policy also provides "Extended Business Income" coverage, which promises to provide temporally extended payments to compensate for actual loss of Business Income due to the necessary suspension of operations caused by accidental loss or accidental physical damage to the covered property.

21. Defendant's coverage forms also provide "Expenses to Reduce Loss" coverage, which promises to pay necessary expenses sustained in order to avoid further loss of Business Income.

22. Defendant's coverage forms also provide "Civil Authority" coverage, which promises to pay for loss of Business Income caused by action of civil authority that prohibits, among other things, access to the premises.

### Virus or Disease is a Covered Cause of Loss under The Policy

23. The presence of virus or disease can constitute physical loss of or damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance

4

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000004 of 000016

industry drafting arm—Insurance Services Office, Inc. or "ISO"—circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and building interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

24. The ISO also created a new "amendatory endorsement" to exclude loss due to virus or bacteria from coverage afforded by certain insurance policies. The ISO amendatory endorsement states that there is "no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "**Virus Exclusion**").

25. Some insurers added the Virus Exclusion to their policies that provide Business Income (also referred to as "business interruption") coverage. Cincinnati's Building and Personal Property Coverage Form and Business Income Without Extra Expense Coverage Form, however, do not include, and are not subject to, any exclusion for losses caused by viruses or communicable diseases.

26. Defendant did not exclude or limit coverage for losses from viruses in the Policy. The Policy did not exclude pandemic coverage, communicable disease coverage, or anything similar.

27. Losses due to COVID-19 are not excluded by the Policy but are, instead, covered losses under the Policy.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000005 of 000016

NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

## COVID-19: The Covered Cause of Loss

27.     COVID-19 is a highly contagious virus that has rapidly spread and continues to spread across the United States. It is a physical substance, human pathogen, and can be present outside the human body in viral fluid particles. According to the CDC, everyone is at risk of getting COVID-19.

28      COVID-19 is spread by a number of methods, including "community spread," meaning that some people have been infected and it is not known how or where they became exposed. Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

29.     The CDC has reported that a person can become infected with COVID-19 by touching a surface or object (like a table, floor, wall, furniture, desk, countertop, touch screen, or chair) that has the virus on it, and then touching their own mouth, nose or eyes. COVID-19 can and does live on and/or remains capable of being transmitted and active on inert physical surfaces.

30.     More specifically, COVID-19 infections are spread through droplets of different sizes which can be deposited on surfaces or objects.

31.     In addition, The New England Journal of Medicine reported finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations. An April 2020 study published in the journal Emerging Infectious Diseases found a wide distribution of COVID-19 on surfaces and in the air about 13 feet from patients in two hospital wards. This means there has been a finding of COVID-19 in the air.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000006 of 000016

NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

32.   COVID-19 has been transmitted by way of human contact with surfaces and items of physical property located at premises in Louisville, Kentucky.

33.   COVID-19 has been transmitted by human to human contact and interaction with premises in Louisville, Kentucky.

34.   COVID-19 has been transmitted by way of human contact with airborne COVID-19 particles emitted into the air at premises in Louisville, Kentucky.

35.   The presence of any COVID-19 particles renders items of physical property unsafe and the premises unsafe.

36.   The presence of any COVID-19 particles on physical property impairs its value, usefulness and/or normal function.

37.   The presence of any COVID-19 particles causes direct physical harm, direct physical damage, and/or direct physical loss to property.

38.   The presence of people infected with or carrying COVID-19 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss and/or physical damage to that property.

39.   The presence of people infected with or carrying COVID-19 particles at premises renders the premises—including property located at that premises—unsafe, resulting in direct physical loss and/or physical damage to the premises and property.

40.   Plaintiff's premises has likely been infected with COVID-19 and Plaintiff has suffered direct physical loss and/or physical damage at the property. The incubation period for COVID-19 is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020—weeks earlier than previously reported, suggesting that the virus has been circulated in the United States for far longer than previously assumed. It is likely that customers, employees, and/or other visitors to the

7

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000007 of 000016

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

Renaissance Fun Park were infected with COVID-19 and thereby infected the premises with COVID-19, resulting in direct physical loss or physical damage.

41.    To reduce the spread of the disease, the CDC has recommended that businesses clean and disinfect all surfaces, prioritizing the most frequently touched surfaces.

42.    COVID-19 has been declared a pandemic by the World Health Organization.

43    The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize recreational facilities like the Renaissance Fun Park.

44.    The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the **"Closure Orders"**).

### The Kentucky Closure Orders

45.    On March 6, 2020, Kentucky Governor Andy Beshear signed an Executive Order declaring a State of Emergency in response to the COVID-19 pandemic.

46.    On March 17, 2020, the Cabinet for Health and Family Services published an Order that required public-facing businesses which encourage public congregation (including recreational facilities), to cease all in-person operations by 5:00 p.m. on March 18, 2020. The March 17, 2020 Order is attached hereto as **Exhibit C**.

47.    On March 19, 2020, the Cabinet for Health and Family Services prohibited all mass gatherings. The March 19, 2020 Order is attached hereto as **Exhibit D**.

8

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000008 of 000016

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

48.     On March 25, 2020, Kentucky Governor Andy Beshear signed an Executive Order mandating the closure of all non-life sustaining businesses effective March 26, 2020, at 8:00 pm. The March 25, 2020 Order is attached hereto as **Exhibit E**.

49.     These Orders (collectively, the "**First Closure Orders**") all applied to the Renaissance Fun Park, and required the suspension of its operations.

50.     The First Closure Orders prohibited access to the Renaissance Fun Park.

51.     The Renaissance Fun Park ceased operations after close of business on March 17, 2020, in accordance with the March 17, 2020 Order.

52.     The Renaissance Fun Park did not resume operations until June 12, 2020— three days after they were legally permitted to re-open.

53.     Among other things, the First Closure Orders triggered the Policy's Civil Authority provisions.

54.     As a result of the suspension of operations at the Renaissance Fun Park, Plaintiff has lost substantial Business Income.

55.     As a result of the prohibition of access to the Renaissance Fun Park, Plaintiff has lost substantial Business Income.

56.     Plaintiff has had to incur substantial expenses in order to reduce further losses of Business Income.

57.     On or about November 18, 2020, due to increasing infection rates in and around Kentucky, including Louisville, Governor Beshear signed a new Executive Order mandating that all indoor food and beverage cease.  In addition, indoor social gatherings are limited to a maximum of two households and eight people, indoor recreation facilities to 33% of occupancy and six feet of space between people, and indoor venues limited to

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000009 of 000016

9

NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

25 people.  The November 18, 2020 Order is attached as **Exhibit F** (the "**Second Closure Order**").

58.    As a result of such Order, Renaissance Fun Park is unable to offer food and beverages indoor, nor is it able to use its laser tag facility as it requires virtual darkness resulting in an inability of participants to remain six feet apart as required by the Second Closure Order.

59.    As a result, substantial portions of Renaissance Fun Park's business must cease, thereby causing a further substantial loss of Business Income.

### Plaintiff Submitted Notices of Loss to Cincinnati And was Wrongfully Denied Coverage

60.    Plaintiff submitted notices of loss to Cincinnati under the Policy due to the presence of COVID-19, the First Closure Orders, and the Second Closure Order.

61.    On May 29, 2020, Cincinnati sent a denial letter to Plaintiff ostensibly denying coverage for the losses sustained as a result of COVID-19 and the Closure Orders.

62.    Upon information and belief, Cincinnati will deny any claim based on the Second Closure Order for the identical basis set forth in the first Denial Letter.

63.    Upon information and belief, Cincinnati is using a form denial letter to deny coverage to all its insureds with policies similar to Plaintiffs and is otherwise uniformly refusing to pay insureds under its standard policy for losses related to COVID-19.

### V.    CLAIMS FOR RELIEF

### COUNT I
### Declaratory Judgment – Business Income Coverage

64.    Plaintiff repeats and realleges Paragraphs 1–63 as if fully set forth herein.

65.    Plaintiff petitions this Court to declare the following:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000010 of 000016

10

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

66.    That Plaintiff's Business Income losses, which were incurred in connection with the suspension of its business stemming from the COVID-19 pandemic, are insured losses under the Policy's Business Income Coverage; and

67.    That Cincinnati is obligated to pay Plaintiff for the full amount of Business Income losses stemming from the COVID-19 pandemic, incurred during the period of restoration.

## COUNT II
### Breach of Contract – Business Income Coverage

68.    Plaintiff repeats and realleges Paragraphs 1–67 as if fully set forth herein.

69.    The Policy is a contract under which Cincinnati was paid premiums in exchange for their promise to pay Plaintiff's losses for claims covered by the Policy.

70.    In the Policy, Cincinnati agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

71.    COVID-19 caused direct physical loss and/or damage to the Renaissance Fun Park, requiring Plaintiff to suspend operations. Such losses caused by COVID-19 triggered the Business Income provision of the Policy.

72.    Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations.

73.    By denying coverage for any Business Income losses incurred by Plaintiff in connection with the COVID-19 pandemic, Defendant has breached its Business Income coverage obligations under the Policy.

11

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000011 of 000016

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

74.    As a result of Defendant's breach of the Policy, Plaintiff has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT III
### Declaratory Judgment – Extended Business Income Coverage

75.    Plaintiff repeats and realleges Paragraphs 1–74 as if fully set forth herein.

76.    Plaintiff petitions this Court to declare the following:

77.    That Plaintiff's losses of Business Income are insured losses under the Policy's Extended Business Income Coverage; and

78.    That Defendant is obligated to pay Plaintiff for the full amount of Plaintiff's Extended Business Income losses incurred in connection with the COVID-19 pandemic.

## COUNT IV
### Breach of Contract – Extended Business Income Coverage

79.    Plaintiff repeats and realleges Paragraphs 1–78 as if fully set forth herein.

80.    The Policy is a contract under which Cincinnati was paid premiums in exchange for their promise to pay Plaintiff's losses for claims covered by the Policy.

81.    The Business Income losses suffered by Plaintiff triggered the Extended Business Income provision under the Policy.

82.    Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations.

83.    By denying coverage for Extended Business Income, Defendant has breached its coverage obligations under the Policy.

84.    As a result of Defendant's breach of the Policy, Plaintiff has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

12

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000012 of 000016

## COUNT V
### Declaratory Judgment – Expenses to Reduce Loss

85.    Plaintiff repeats and realleges Paragraphs 1–84 as if fully set forth herein.

86.    Plaintiff petitions this Court to declare the following:

87.    That expenses incurred by Plaintiff in order to combat COVID-19 and avoid further losses of Business Income are insured losses under the Policy.

88.    That Defendant is obligated to pay Plaintiff for the full amount of expenses that Plaintiff incurred in order to reduce loss of Business Income stemming from the COVID-19 pandemic.

## COUNT VI
### Breach of Contract – Expenses to Reduce Loss

89.    Plaintiff repeats and realleges Paragraphs 1–88 as if fully set forth herein.

90.    The Policy is a contract under which Cincinnati was paid premiums in exchange for their promise to pay Plaintiff's losses for claims covered by the Policy.

91.    Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations.

92.    By denying coverage for expenses incurred by Plaintiff in order to combat COVID-19 and avoid further losses of Business Income, Defendant has breached its coverage obligations under the Policy.

93.    As a result of Defendant's breach of the Policy, Plaintiff has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT VII
### Declaratory Judgment – Civil Authority Coverage

94.    Plaintiff repeats and realleges Paragraphs 1–93 as if fully set forth herein.

13

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000013 of 000016

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

95.     Plaintiff petitions this Court to declare the following:

96.     That the Closure Orders triggered the Civil Authority provisions of the

Policy.

97.     That Plaintiff's Civil Authority losses, which were incurred in connection

with the First and Second Closure Orders and the necessary interruption of their business

stemming from the COVID-19 pandemic, are insured losses under the Policy.

98.     Defendant is obligated to pay Plaintiff for the full amount of the Civil

Authority losses incurred and to be incurred in connection with the covered losses related

to the Closure Orders and the necessary interruption of its business stemming from the

COVID-19 pandemic.

<div align="center">

### COUNT VIII
#### Breach of Contract – Civil Authority Coverage

</div>

99.     Plaintiff repeats and realleges Paragraphs 1–98 as if fully set forth herein.

100.    The Policy is a contract under which Cincinnati was paid premiums in

exchange for their promise to pay Plaintiff's losses for claims covered by the Policy.

101.    Pursuant to the Policy, the Defendant agreed to pay for the actual loss of

Business Income sustained, caused by action of Civil Authority that prohibits access to

the Covered Property, when a Covered Cause of Loss causes direct damage to property

other than the Covered Property, the civil authority prohibits access to the area

immediately surrounding the damaged property, and the action of civil authority is taken

in response to dangerous physical conditions resulting from the damage or continuation

of the Covered Cause of Loss that caused the damage.

102.    The First and Second Closure Orders triggered the Civil Authority

provisions of the Policy.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000014 of 000016

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

103.   Plaintiff has complied with all applicable provisions of the Policy and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations.

104.   By denying coverage for any Business Income losses incurred by Plaintiff in connection with the First and Second Closure Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policy.

105.   As a result of Defendant's breach of the Policy, Plaintiff has sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a.   For a judgment against Defendant for the causes of action alleged against it;

b.   For compensatory damages in an amount to be proven at trial;

c.   For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy;

d.   For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy;

e.   For pre-judgment and post-judgment interest at the maximum rate permitted by law;

f.   For Plaintiffs' attorneys' fees;

g.   For Plaintiff's cost incurred;

h.   For Trial by Jury; and

i.   For such other and further relief as the Court deems just and proper.

15

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000015 of 000016

NOT ORIGINAL DOCUMENT
12/04/2020 10:43:35 AM
38265-6

Respectfully Submitted

_/s/ John D. Cox_
John D. Cox
Stefan E. Staloff
**LYNCH, COX, GILMAN & GOODMAN P.S.C.**
500 West Jefferson Street, Suite 2100
(502) 589-4215
jcox@lynchcox.com
sstaloff@lynchcox.com
***Counsel for Plaintiff***

16

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

COM : 000016 of 000016

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
                                                  NOT ORIGINAL DOCUMENT
                                                  12/04/2020 10:46:37 AM
                                                  38265-6

# EXHIBIT A

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000001 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265-6



# The Cincinnati Indemnity Company
A Stock Insurance Company

Headquarters: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
Mailing address: P.O. Box 145496, Cincinnati, OH 45250-5496
www.cinfin.com ■ 513-870-2000

## COMMON POLICY DECLARATIONS

Billing Method: AGENCY BILL

POLICY NUMBER   EPP 010 03 79 / EBA 010 03 79

**NAMED INSURED** RENAISSANCE DEVELOPMENT
REFER TO IA905
**ADDRESS**        101 N 7TH ST
(Number & Street,  LOUISVILLE, KY 40202-2924
Town, County,
State & Zip Code)

**Previous Policy Number:**
EPP0100379

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: EPP 010 03 79        FROM: 07-30-2018    TO: 07-30-2021

**Automobile and / or Garage**
Policy number: EBA 010 03 79        FROM: 07-30-2018    TO: 07-30-2019

Agency   STERLING G. THOMPSON COMPANY, LLC 16-415
City      LOUISVILLE, KY

**Legal Entity / Business Description**

ORGANIZATION (ANY OTHER)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
| | | |
|---|---|---|
| SKY1 | 11/15 | NOTICE |
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA905 | 02/98 | NAMED INSURED SCHEDULE |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4493 | 09/17 | NOTICE TO POLICYHOLDERS – EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") EDITION 09 17 |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4122KY | 03/16 | KENTUCKY CHANGES – CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4376KY | 12/09 | KENTUCKY TAXES ENDORSEMENT |
| IA460 | 01/16 | PROTECTIVE SAFEGUARDS |
| MI1384KY | 06/92 | NOTICE TO KENTUCKY INSUREDS - AUTOMOBILE COVERAGES |
| FMD502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GAD532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MAD559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| MAD558 | 06/07 | SIGNS COVERAGE PART DECLARATIONS |

IAD509 01 12

EPP 010 03 79 / EBA 010 03 79

Page 1 of 2

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000002 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265-6

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | | |
|---|---|---|
| CAD516 | 03/09 | CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES) |
| AAD505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| USD513 | 05/10 | COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS |
| HC502 | 01/18 | CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS |

08-08-2018 09:15

Countersigned _____  By _____
                        (Date)                                (Authorized Representative)

**NOTICE**

Your premium for this policy includes a Kentucky state surcharge tax required by KRS 136.392 and a tax which will be remitted to the municipality or county in which you reside as required by KRS 91A.080. The amount of the tax is shown on your policy.

S-KY-1 (11/15)

IAD509 01 12                                          Page  2 of  2

EPP 010 03 79 / EBA 010 03 79

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000003 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed       20-CI-006955       12/02/2020       David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
88606

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under this Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98                Copyright, Insurance Services Office, Inc., 1998

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000004 of 000062

Filed       20-CI-006955       12/02/2020       David L. Nicholson, Jefferson Circuit Clerk

Filed       20-CI-006955       12/02/2020       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

## SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER:  EPP 010 03 79 / EBA 010 03 79          Effective Date: 07-30-2018

Named Insured:  RENAISSANCE DEVELOPMENT

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
### PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part    W/EBC | $ 13,274 |
| Commercial General Liability Coverage Part | $ 2,242 |
| Commercial Auto Coverage Part | $ 4,098 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 4,000 |
| DATA DEFENDER COVERAGE PART | $ 143 |
| CRIME AND FIDELITY COVERAGE PART | $ 802 |
| CONTRACTORS EQUIPMENT SCHEDULED | $ 1,884 |
| SIGNS | $ 538 |
| KY MUNICIPAL TAX - REFER TO IA4376KY | $ 1,555 |
| KY SURCHARGE - REFER TO IA4376KY | $ 491 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 177 |
| Installment Charge | $ 20 |
| **ANNUAL TOTAL** | $ 29,224 |

### PAYMENTS

| | First Installment | Remaining Installment(s) |
|---|---|---|
| QUARTERLY | 7,306 | 7,306 |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000005 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
85654

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 101 N 7TH ST LOUISVILLE, KY 40202-2924 | | | |
| 2 | 201 PARK PLACE DR LOUISVILLE, KY 40243-2524 | | | |
| 3 | WOODS ST LOUISVILLE, KY 40203 | | | |
| 4 | 74 LAKE AVE LOUISVILLE, KY 40206-3300 | | | |
| 5 | 6505 OAK VALLEY DR LOUISVILLE, KY 40214-3117 | | | |
| 6 | 10300-10310 RENAISSANCE VALLEY WAY LOUISVILLE, KY 40272 | | | |
| 7 | 7501 ROSEMARY LN LOUISVILLE, KY 40214-3131 | | | |
| 8 | 10500 LEVEN BLVD LOUISVILLE, KY 40229-2374 | | | |
| 9 | 12802 LOST HILL WALK LOUISVILLE, KY 40272-5307 | | | |
| 10 | 12804 LOST HILL WALK LOUISVILLE, KY 40272-5307 | | | |
| 11 | 12806 LOST HILL WALK LOUISVILLE, KY 40272-5307 | | | |
| 12 | 12810 LOST HILL WALK LOUISVILLE, KY 40272-5307 | | | |
| 13 | 12812 LOST HILL WALK LOUISVILLE, KY 40272-5307 | | | |
| 14 | 12814 LOST HILL WALK LOUISVILLE, KY 40272-5307 | | | |
| 15 | 10100 VISTA HILLS BLVD LOUISVILLE, KY 40291-3469 | | | |

IA 904 04 04

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000006 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NAMED INSURED SCHEDULE

This Schedule supplements the Declarations.

### SCHEDULE

Named Insured:

RENAISSANCE DEVELOPMENT
DKCD INC
COOPER FARMS
RENAISSANCE PROPERTIES LLC
NORMANDY INC
COMMERCE CROSSING BUSINESS CENTER LLC
RENAISSANCE BUSINESS CENTER SOUTH LLC
SEARS AVENUE PARTNERS
RENAISSANCE DEERING ROAD LLC
RENAISSANCE EASTPOINT LLC
GLENMARY VILLAGE LLC
WOODS OF ST ANDREWS LLC
RENAISSANCE DEERING LLC
RENAISSANCE VALLEY FARMS LLC
RENAISSANCE LS LLC
RENAISSANCE/THE PARK
RENAISSANCE AUDUBON WOODS
RENAISSANCE REALTY CONSULTANTS LLC
RENAISSANCE REALTY INVESTMENTS LLC
WOODRIDGE LAKE BUILDERS LLC
THE OVERLOOK CONDOS AT GLENMARY VILLAGE LLC
RFHC LLC, RENAISSANCE FAIR HOUSING CONSULTANTS LLC

IA 905 02 98

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000007 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
89655-6

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

**Premium:**

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

**Federal Participation:**

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| **Percentage** | **Calendar Year** |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

**Cap on Insurer Participation:**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000008 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
                                                 NOT ORIGINAL DOCUMENT
                                                 12/04/2020 10:46:37 AM
                                                 38265-6

# NOTICE TO POLICYHOLDERS - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") EDITION 09 17

This is a summary of the major changes found in the new edition of the Commercial General Liability Broadened Endorsements. NO COVERAGE IS PROVIDED BY THIS SUMMARY. Nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages that you are provided. If there is any conflict between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The major areas within the General Liability and Commercial Umbrella endorsements that broaden coverage, are highlighted below. This notice does not reference every editorial change made in the endorsements.

**Forms:** GA243, GA346, GA347, GA369, GA370, GA373, GA374, GA375, GA376, US3005, US3043, US3044, US3045, XS311, XS312, XS321 and XS322.

**Broadening of Coverage**

Created an exception for drainable (water managed) EIFS on Noncombustible, Masonry Noncombustible, Modified Fire Resistive and Fire Resistive, non-residential structures, subject to a $5,000 per occurrence retention for real property.

IA 4493 09 17

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000009 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265-6

# THE CINCINNATI INSURANCE COMPANY
# THE CINCINNATI CASUALTY COMPANY
# THE CINCINNATI INDEMNITY COMPANY

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

IP 446 08 01

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000010 of 000062

Filed      20-CI-006955      12/02/2020      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
86648

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A.   Special Per Occurrence Deductible**

1.   If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

   **a.**   The Commercial Inland Marine Coverage Part, and

   **b.**   The Crime and Fidelity Coverage Part;

   the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

2.   This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

   **a.**   * **Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible**

   * **Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement**

   **Windstorm or Hail Percentage Deductible Form**

   **Earthquake and Volcanic Eruption Endorsement**

   **Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)**

   **Flood Coverage Endorsement**

   **Equipment Breakdown Coverage (Including Production Equipment)**

   **Equipment Breakdown Coverage (Excluding Production Equipment)**

   * **Temperature Change Coverage Form**

   **Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud**

   **Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration**

   **Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud**

   *   **Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms**

   **b.**   ☐ **Other**

IA 4006 07 10                                                                                    Page 1 of 2

Presiding Judge: HON. CHARLES L CUNNINGHAM (630297)

EXH : 000011 of 000062

Filed      20-CI-006955      12/02/2020      David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
                                                   NOT ORIGINAL DOCUMENT
                                                   12/04/2020 10:46:37 AM
                                                   38265-6

**B.   Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1.  **COMMERCIAL PROPERTY CONDITIONS,**
2.  **COMMERCIAL INLAND MARINE CONDITIONS,**
3.  **COMMERCIAL CRIME COVERAGE FORM,**
4.  **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5.  **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

IA 4006 07 10                                                      Page 2 of 2

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000012 of 000062

Filed       20-CI-006955       12/02/2020       David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
86694

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# KENTUCKY CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CHEMICAL DRIFT LIMITED LIABILITY COVERAGE PART - CLAIMS-MADE
CINCINNATI CYBER DEFENSE™ COVERAGE PART
CINCINNATI DATA DEFENDER™ COVERAGE PART
CINCINNATI NETWORK DEFENDER™ COVERAGE PART
CLAIMS-MADE EXCESS LIABILITY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE FORM - CLAIMS-MADE
CONTRACTORS' LIMITED POLLUTION LIABILITY COVERAGE FORM
CRIME AND FIDELITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYEE BENEFIT LIABILITY COVERAGE
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY COVERAGE PART
EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE PART
FARM COVERAGE PART
GOLF COURSE CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE FORM
HOLE-IN-ONE COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
MACHINERY AND EQUIPMENT COVERAGE PART
MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE
SEPTIC SYSTEMS DESIGN AND INSPECTION ERRORS AND OMISSIONS COVERAGE PART
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation of Policies in Effect for 60 Days or Less**

If this policy has been in effect for 60 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 14 days before the effective date of cancellation.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation of Policies in Effect for More than 60 Days**

**a.** If this policy has been in effect for more than 60 days or is a renewal of a policy we issued, we may cancel

this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

(3) Discovery of willful or reckless acts or omissions on your part which increase any hazard insured against;

(4) The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

IA 4122 KY 03 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000013 of 000052

Filed       20-CI-006955       12/02/2020       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
58242650

(5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

(6) We are unable to reinsure the risk covered by the policy; or

(7) A determination by the commissioner that the continuation of the policy would place us in violation of the Kentucky insurance code or regulations of the commissioner.

b. If we cancel this policy based on Paragraph 7.a. above, we will mail or deliver a written notice of cancellation to the first Named Insured, stating the reason for cancellation, at least:

(1) 14 days before the effective date of the cancellation, if cancellation is for nonpayment of premium; or

(2) 75 days before the effective date of the cancellation, if cancellation is for any reason stated in 7.a.(2) through 7.a.(7) above.

C. The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. For the purpose of this Condition:

a. Any policy period or term of less than 6 months shall be considered to be a policy period or term of 6 months; and

b. Any policy period or term of more than 1 year or any policy with no fixed expiration date shall be considered a policy period or term of 1 year.

2. If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, at the last mailing address known to us, at least 75 days before:

a. The expiration date of the policy period; or

b. The anniversary date of this policy, if the policy is written for a term of more than one year.

3. If notice of nonrenewal is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed for the ensuing policy period upon payment of the appropriate premium until you have accepted replacement coverage with another insurer, or until you have agreed to the nonrenewal.

4. If we mail or deliver a renewal notice to the first Named Insured at least 30 days before the end of the policy period, stating the renewal premium and its due date, the policy will terminate without further notice unless the renewal premium is received by us or our authorized agent by the due date.

5. If this policy terminates because the renewal premium has not been received by the due date, we will, within 15 days, mail or deliver to the first Named Insured at his last known address a notice that the policy was not renewed and the date it was terminated.

6. If notice is mailed, proof of mailing is sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000014 of 000062

Filed       20-CI-006955       12/02/2020       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that ex-

ceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

**1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

**2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

**3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO
Properties, Inc. and American Association
of Insurance Services, with their permission.

IA 4238 01 15

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000015 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
85268

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

                    Secretary                                              President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

IA 4338 05 11

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000016 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed     20-CI-006955     12/02/2020     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
87516

# KENTUCKY TAXES ENDORSEMENT

Policy Number:  EPP 010 03 79                    Effective Date:  07-30-2018

The following Kentucky taxes (which include a collection fee) have been applied to your policy:

| | Annual Premium | Municipal Tax | County Tax |
|---|---|---|---|
| POLICY LEVEL | LOUISVILLE USD INCORPORATED - 01017 | | |
| AUTO/GARAGE | 227 | 5.70%-14 | NONE |
| PROPERTY | 2,345 | 5.70%-133 | NONE |
| CASUALTY | 5,325 | 5.70%-306 | NONE |
| INLAND MARINE | 1,902 | 5.70%-108 | NONE |
| INSTALLMENT CHARGE | 20 | 5.70%-1 | NONE |
| | | | |
| LOCATION 1 | LOUISVILLE USD INCORPORATED - 01017 | | |
| PROPERTY | 3,479 | 5.70%-198 | NONE |
| CASUALTY | 890 | 5.70%-51 | NONE |
| | | | |
| LOCATION 2 | MIDDLETOWN INCORPORATED - 00085 | | |
| PROPERTY | 5,349 | 5.70%-305 | NONE |
| INLAND MARINE | 538 | 5.70%-31 | NONE |
| | | | |
| LOCATION 3 | LOUISVILLE-JEFFERSON - 00001 | | |
| CASUALTY | 247 | 5.70%-14 | NONE |
| | | | |
| LOCATION 4 | LOUISVILLE USD INCORPORATED - 01017 | | |
| CASUALTY | 137 | 5.70%-8 | NONE |
| | | | |
| LOCATION 5 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| CASUALTY | 55 | 5.70%-3 | NONE |
| | | | |
| LOCATION 6 | LOUISVILLE-JEFFERSON COUNTY - 00332 | | |
| CASUALTY | 110 | 5.70%-6 | NONE |
| | | | |
| LOCATION 7 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| CASUALTY | 55 | 5.70%-3 | NONE |
| | | | |
| LOCATION 8 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| CASUALTY | 220 | 5.70%-13 | NONE |
| | | | |
| LOCATION 9 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| PROPERTY | 382 | 5.70%-22 | NONE |
| CASUALTY | 28 | 5.70%-2 | NONE |
| | | | |
| LOCATION 10 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| PROPERTY | 360 | 5.70%-21 | NONE |
| CASUALTY | 35 | 5.70%-2 | NONE |

All other terms and conditions remain unchanged.

Agent:  STERLING G. THOMPSON COMPANY, LLC 16-415
            LOUISVILLE, KY

IA 4376 KY 12 09                                                        Page 1 of 2

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000017 of 000062

Filed     20-CI-006955     12/02/2020     David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265-6

Policy Number:  EPP 010 03 79                    Effective Date:  07-30-2018

The following Kentucky taxes (which include a collection fee) have been applied to your policy:

| | Annual Premium | Municipal Tax | County Tax |
|---|---|---|---|
| **(CONTINUED)** | | | |
| LOCATION 11 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| PROPERTY | 360 | 5.70%-21 | NONE |
| CASUALTY | 35 | 5.70%-2 | NONE |
| LOCATION 12 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| PROPERTY | 360 | 5.70%-21 | NONE |
| CASUALTY | 35 | 5.70%-2 | NONE |
| LOCATION 13 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| PROPERTY | 360 | 5.70%-21 | NONE |
| CASUALTY | 35 | 5.70%-2 | NONE |
| LOCATION 14 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| PROPERTY | 360 | 5.70%-21 | NONE |
| CASUALTY | 35 | 5.70%-2 | NONE |
| LOCATION 15 | LOUISVILLE-JEFF INCORPORATED - 00001 | | |
| PROPERTY | 15 | 5.70%-1 | NONE |
| VEHICLE 1 | LOUISVILLE USD INCORPORATED - 01017 | | |
| | 1,035 | 5.70%-59 | NONE |
| VEHICLE 2 | LOUISVILLE USD INCORPORATED - 01017 | | |
| | 1,065 | 5.70%-61 | NONE |
| VEHICLE 3 | LOUISVILLE USD INCORPORATED - 01017 | | |
| | 1,779 | 5.70%-101 | NONE |

| | Annual Premium | Surcharge % | Surcharge Total |
|---|---|---|---|
| KY STATE SURCHARGE 1.8% | 27,178 | | 491 |

All other terms and conditions remain unchanged.
Agent:  STERLING G. THOMPSON COMPANY, LLC 16-415
        LOUISVILLE, KY

IA 4376 KY 12 09                                                    Page 2 of 2

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000016 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

Policy Number   EPP 010 03 79

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

### SCHEDULE

| Loc. Number | Bldg. Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-1 |

Describe any "P-9":

**A.** The following is added to the:

**Commercial Property Conditions**
**Farm Property Coverage Form, General Conditions**
**Commercial Inland Marine Conditions**

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the **SCHEDULE** of this endorsement.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

   **"P-1"   Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   a. Any automatic fire protective or extinguishing system, including connected:

      (1) Sprinklers and discharge nozzles;

      (2) Ducts, pipes, valves and fittings;

      (3) Tanks, their component parts and supports; and

      (4) Pumps and private fire protection mains.

   b. When supplied from an automatic fire protective system:

      (1) Non-automatic fire protective systems; and

      (2) Hydrants, standpipes and outlets.

   **"P-2"   Automatic Fire Alarm,** protecting the entire building, that is:

   a. Connected to a central station; or

   b. Reporting to a public or private fire alarm station.

   **"P-3"   Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the "premises" are not in actual operation.

   **"P-4"   Service Contract** with a privately owned fire department providing fire protection service to the "premises".

   **"P-5"   Automatic Commercial Cooking Exhaust and Extinguishing System** installed on cooking appliances and having the following components:

IA 460 01 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000010 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

a.  Hood;

b.  Grease removal device;

c.  Duct system; and

d.  Wet chemical fire extinguishing equipment.

"P-9"  The protective system described in the **SCHEDULE** of this endorsement.

B.  The following is added to the **EXCLUSIONS** section of any Coverage Form within the Commercial Property, Farm or Commercial Inland Marine Coverage Part:

**Failure to Maintain Protective Safeguards**

We will not pay for "loss" caused by or resulting from fire, if prior to the fire, you:

1)  Knew of any suspension or impairment in any protective safeguard listed in the **SCHEDULE** of this endorsement and failed to notify us of that fact; or

2)  Failed to maintain in complete working order any protective safeguard listed in the **SCHEDULE** of this endorsement over which you had control.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Date  _____       Signature of Insured  _____

STERLING G. THOMPSON COMPANY, LLC 16-415
LOUISVILLE, KY

IA 460 01 16

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

Page 2 of 2

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000020 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265-6

## NOTICE TO KENTUCKY INSUREDS - AUTOMOBILE COVERAGES

Additional amounts for the following coverages are available:

_____        **Uninsured Motorists Coverage**

_____        **Underinsured Motorists Coverage**

_____        **Additional Personal Injury Protection**

You may contact your agent if you wish to increase coverage up to the maximum limit available.  Limits and rates will be furnished by your agent upon request.

**MI-1384 KY (6/92)**

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : : 000021 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
28765

## THE CINCINNATI INDEMNITY COMPANY

### A Stock Insurance Company

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:        EPP 010 03 79

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.   (address)**
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

| | | | | | OPTIONAL COVERAGES Applicable only when an entry is made | | | | | | |
| COVERAGE PROVIDED | | | | | | | | | Business Income Indemnity | | |
| Item | Coverage | Limits | Coin- surance | Covered Cause Of Loss | Inflation Guard (%) | Replace- ment Cost (x) | Replace- ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (x) | Extended Period (Days) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | BLANKET BUILDING | 2,926,868 | 90% | SPECIAL EQ | | X | | X | | | |
| | BLANKET BUSINESS PERSONAL PROPERTY | 826,080 | 90% | SPECIAL EQ | | X | | X | | | |
| 1-1 | BUSINESS INCOME W/O EXTRA EXPENSE (b) | 428,000 | 50% | SPECIAL EQ | | | | | | | |
| 2-1 | BUSINESS INCOME W/O EXTRA EXPENSE (b) | 1,000,000 | 50% | SPECIAL EQ | | | | | | | |
| 9-1 | BUILDING INCLUDING MASONRY VENEER | 154,700 | 80% | SPECIAL EQ | | X | | X | | | |
| 9-1 | BUSINESS INCOME W/EXTRA EXPENSE (c) | 6,000 | 90% | SPECIAL EQ | | | | X | | | |
| 10-1 | BUILDING INCLUDING MASONRY VENEER | 154,700 | 90% | SPECIAL EQ | | X | | X | | | |
| 10-1 | BUSINESS INCOME W/EXTRA EXPENSE (c) | 6,000 | 90% | SPECIAL EQ | | | | X | | | |
| 11-1 | BUILDING INCLUDING MASONRY VENEER | 154,700 | 90% | SPECIAL EQ | | X | | X | | | |
| 11-1 | BUSINESS INCOME W/EXTRA EXPENSE (c) | 6,000 | 90% | SPECIAL EQ | | | | X | | | |
| 12-1 | BUILDING INCLUDING MASONRY VENEER | 154,700 | 90% | SPECIAL EQ | | X | | X | | | |
| 12-1 | BUSINESS INCOME W/EXTRA EXPENSE (c) | 6,000 | 90% | SPECIAL EQ | | | | X | | | |
| 13-1 | BUILDING INCLUDING MASONRY VENEER | 154,700 | 90% | SPECIAL EQ | | X | | X | | | |

FMD502 07 08                        EPP 010 03 79                        Page 1 of 2

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000022 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265-6

| 13-1 | BUSINESS INCOME W/EXTRA EXPENSE (c) | 6,000 | 90% | SPECIAL EQ | | x |
|------|------|------|------|------|------|------|
| 14-1 | BUILDING INCLUDING MASONRY VENEER | 154,700 | 90% | SPECIAL EQ | x | x |
| 14-1 | BUSINESS INCOME W/EXTRA EXPENSE (c) | 6,000 | 90% | SPECIAL EQ | | x |
| 15-1 | BUILDING | 10,000 | 90% | SPECIAL | | |

DEDUCTIBLE: $500.00 unless otherwise stated $   5,000
EARTHQUAKE DEDUCTIBLE: 10%

**MORTGAGE HOLDER**

| Item | Name and Address |
|------|------|

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| CP1515 | 06/95 | BUSINESS INCOME REPORT/WORK SHEET |
|------|------|------|
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| FA4168 | 05/16 | NOTICE TO POLICYHOLDERS COMMERCIAL PROPERTY COVERAGE PART DESCRIPTION OF REVISIONS EDITION 05 16 |
| FA4052 | 04/06 | CINCIPLUS™ COMMERCIAL PROPERTY EXPANDED COVERAGE (XC™) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FA4144 | 05/16 | WINDSTORM OR HAIL DOLLAR DEDUCTIBLE |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA237 | 05/16 | CINCIPLUS® COMMERCIAL PROPERTY XC® (EXPANDED COVERAGE) ENDORSEMENT |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |
| FA212 | 05/16 | BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |
| FA240 | 05/16 | EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT |

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000023 of 000062

FMD502 07 08                    EPP 010 03 79                    Page 2 of 2

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
68592F

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
# (INCLUDING SPECIAL CAUSES OF LOSS)

### TABLE OF CONTENTS

| | Begins on Page |
|---|---|
| SECTION A. COVERAGE | 3 |
| 1. Covered Property | 3 |
| a. Building | 3 |
| b. Outdoor Signs | 3 |
| c. Outdoor Fences | 3 |
| d. Business Personal Property | 3 |
| 2. Property Not Covered | 4 |
| a. Accounts, Deeds, Money or Securities | 4 |
| b. Animals | 4 |
| c. Automobiles | 4 |
| d. Contraband | 4 |
| e. Electronic Data | 4 |
| f. Excavations, Grading & Backfilling | 4 |
| g. Foundations | 4 |
| h. Land, Water or Growing Crops | 4 |
| i. Paved Surfaces | 4 |
| j. Property While Airborne or Waterborne | 4 |
| k. Pilings or Piers | 4 |
| l. Property More Specifically Insured | 4 |
| m. Retaining Walls | 4 |
| n. Underground Pipes, Flues or Drains | 4 |
| o. Valuable Papers & Records and Cost to Research | 5 |
| p. Vehicles or Self-Propelled Machines | 5 |
| q. Property While Outside of Buildings | 5 |
| 3. Covered Causes of Loss | 5 |
| a. Covered Causes of Loss | 5 |
| b. Exclusions | 5 |
| c. Limitations | 11 |
| 4. Additional Coverages | 13 |
| a. Change in Temperature or Humidity | 13 |
| b. Debris Removal | 13 |
| c. Fire Department Service Charge | 14 |
| d. Fire Protection Equipment Recharge | 14 |
| e. Inventory or Appraisal | 14 |
| f. Key and Lock Expense | 15 |
| g. Ordinance or Law | 15 |
| h. Pollutant Clean Up and Removal | 16 |
| i. Preservation of Property | 16 |
| j. Rewards | 16 |

FM 101 05 16

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

Page 1 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000024 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265-6

### TABLE OF CONTENTS (CONT'D)

|  |  | Begins on Page |
|---|---|---|
| 5. | Coverage Extensions | 16 |
|  | a. Accounts Receivable | 17 |
|  | b. Business Income and Extra Expense | 18 |
|  | c. Collapse | 21 |
|  | d. Electronic Data | 22 |
|  | e. Exhibitions, Fairs or Trade Shows | 23 |
|  | f. Fences | 23 |
|  | g. Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage | 23 |
|  | h. Glass | 24 |
|  | i. Newly Purchased, Leased or Constructed Property | 25 |
|  | j. Nonowned Building Damage | 26 |
|  | k. Outdoor Property | 26 |
|  | l. Personal Effects | 26 |
|  | m. Property Off Premises | 27 |
|  | n. Signs | 27 |
|  | o. Trailers (Nonowned Detached) | 27 |
|  | p. Transportation | 27 |
|  | q. Utility Services | 27 |
|  | r. Valuable Papers and Records | 28 |
|  | s. Water Damage, Other Liquids, Powder or Molten Material Damage | 29 |
| SECTION B. LIMITS OF INSURANCE | | 29 |
| SECTION C. DEDUCTIBLE | | 29 |
| 1. | Deductible Examples | 30 |
| 2. | Glass Deductible | 30 |
| SECTION D. LOSS CONDITIONS | | 30 |
| 1. | Abandonment | 30 |
| 2. | Appraisal | 30 |
| 3. | Duties in the Event of Loss or Damage | 30 |
| 4. | Loss Payment | 31 |
| 5. | Recovered Property | 34 |
| 6. | Vacancy | 34 |
|  | a. Description of Terms | 34 |
|  | b. Vacancy Provisions | 34 |
| 7. | Valuation | 34 |
| SECTION E. ADDITIONAL CONDITIONS | | 35 |
| 1. | Coinsurance | 35 |
| 2. | Mortgage Holders | 36 |
| SECTION F. OPTIONAL COVERAGES | | 36 |
| 1. | Agreed Value | 37 |
| 2. | Inflation Guard | 37 |
| 3. | Replacement Cost | 37 |
| SECTION G. DEFINITIONS | | 38 |

FM 101 05 16

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

Page 2 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000025 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006955          12/02/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
## (INCLUDING SPECIAL CAUSES OF LOSS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G. DEFINITIONS.**

### SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

   a. **Building**

      Building, means the building or structure described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:

         (a) Machinery and equipment;

         (b) Building glass, including any lettering and ornamentation;

         (c) Signs attached to a building or structure that is Covered Property;

         (d) Awnings and canopies;

      (4) Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

      (5) If not covered by other insurance:

         (a) Additions under construction, alterations and repairs to a covered building;

         (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "premises", used for making additions, alterations or repairs to a covered building.

   b. **Outdoor Signs**

      Your outdoor signs permanently installed and not attached to a covered building, and located within 1,000 feet of the "premises".

   c. **Outdoor Fences**

      Your outdoor fences.

   d. **Business Personal Property**

      Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater. Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.**

      (1) Furniture;

      (2) Machinery and equipment;

      (3) "Stock";

      (4) All other personal property owned by you and used in your business;

      (5) The cost of labor, materials or services furnished or arranged by you on personal property of others;

      (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove;

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 3 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000026 of 000062

David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

(7) Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered personal property of others in your care, custody or control;

(8) Personal Property of Others that is in your care, custody or control or for which you are legally liable.

  (a) This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in 5. Coverage Extensions, l. Personal Effects;

  (b) This does not include property of others for which you are legally liable as:

    1) A carrier for hire; or

    2) An arranger of transportation, including car loaders, consolidators, brokers, freight forwarders, or shipping associations; and

(9) Sales samples.

2. **Property Not Covered**

Covered Property does not include:

a. **Accounts, Deeds, Money or Securities**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

b. **Animals**

Animals, unless

  (1) Owned by others and boarded by you; or

  (2) Owned by you and covered as "stock" while inside of buildings;

and then only as provided in 3. Covered Causes of Loss, c. Limitations.

c. **Automobiles**

Automobiles held for sale;

d. **Contraband**

Contraband, or property in the course of illegal transportation or trade;

e. **Electronic Data**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data**, "Electronic data". This Paragraph e. does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

f. **Excavations, Grading & Backfilling**

The cost of excavations, grading, backfilling or filling;

g. **Foundations**

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

  (1) The lowest basement floor; or

  (2) The surface of the ground, if there is no basement.

h. **Land, Water or Growing Crops**

Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetative roof);

i. **Paved Surfaces**

Bridges, roadways, walks, patios or other paved surfaces;

j. **Property While Airborne or Waterborne**

Personal property while airborne or waterborne;

k. **Pilings or Piers**

Pilings, piers, bulkheads, wharves or docks;

l. **Property More Specifically Insured**

Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except as provided in G. Other Insurance of the COMMERCIAL PROPERTY CONDITIONS;

m. **Retaining Walls**

Retaining walls that are not part of any building described in the Declarations;

n. **Underground Pipes, Flues or Drains**

Underground pipes, flues or drains;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000027 of 000082

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

o.  **Valuable Papers & Records and Cost to Research**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the cost to research, replace or restore the information on "valuable papers and records", including those which exist as "electronic data".

This does not apply to "valuable papers and records" held for sale by you.

p.  **Vehicles or Self-Propelled Machines**

Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the "premises".

This paragraph does not apply to:

(1) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(2) Vehicles or self-propelled machines, other than autos, you hold for sale;

(3) Rowboats or canoes out of water and located at the "premises"; or

(4) Trailers, but only as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, o. Trailers (Nonowned Detached).**

q.  **Property While Outside of Buildings**

The following property while outside of buildings (except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**):

(1) Grain, hay, straw or other crops;

(2) Signs, except:

(a) Signs attached to a covered building or structure;

(b) Signs for which a Limit of Insurance is shown in the Declarations.

(3) Outdoor fences, except outdoor fences for which a Limit of Insurance is shown in the Declarations;

(4) Radio antennas, television antennas or satellite dishes; including their lead-in wiring, masts, and towers; and

(5) Trees, shrubs or plants (other than trees, shrubs or plants that are "stock" or part of a vegetative roof).

3. **Covered Causes of Loss**

a.  **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

b.  **Exclusions**

(1) We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

(a) **Ordinance or Law**

Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the enforcement of or compliance with any ordinance or law:

1) Regulating the construction, use or repair of any building or structure; or

2) Requiring the tearing down of any building or structure, including the cost of removing its debris.

This exclusion applies whether "loss" results from:

1) An ordinance or law that is enforced even if the building or structure has not been damaged; or

2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of any building or structure, or removal of its debris, following a direct "loss" to that building or structure.

(b) **Earth Movement**

1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

2) Landslide, including any earth sinking, rising or shifting related to such event;

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000028 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38765

3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4) Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in (b)1) through 4) above, results in fire or explosion, we will pay for the "loss" caused by that fire or explosion.

5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the "loss" caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

a) Airborne volcanic blast or airborne shock waves;

b) Ash, dust or particulate matter; or

c) Lava flow.

With respect to coverage for Volcanic Action, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct "loss" to the described property.

This Earth Movement exclusion applies regardless of whether any of the above, in paragraphs 1) through 5), is caused by an act of nature or is otherwise caused.

(c) **Governmental Action**

Seizure or destruction of property by order of governmental authority. However, we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

(d) **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

(e) **Utility Services**

1) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, q. Utility Services**, the failure of power, communication, water or other utility services supplied to the "premises", however caused, if the failure:

a) Originates away from the "premises"; or

b) Originates at the "premises", but only if such failure involves equipment used to supply the utility service to the "premises" from a source away from the "premises".

Failure of any utility service includes lack of sufficient capacity and reduction in supply. "Loss" caused by a surge of power is also excluded if the surge would not have occurred but for an event causing the failure of power.

However, if the failure or surge of power, or the failure of communication, water, wastewater removal or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss.

Communication services include but are not limited to

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000029 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265/6

service relating to Internet access or access to any electronic, cellular or satellite network.

**(f) War and Military Action**

1) War, including undeclared or civil war;

2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(g) Water**

1) Flood, meaning the partial or complete inundation of normally dry land areas due to:

a) The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

b) Waves, tidal waters, tidal waves (including tsunami); or

c) Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary;

and all whether driven by wind or not, including storm surge.

2) Mudslides or mudflows, which are caused by flooding as defined above in Paragraph (g)1) above. Mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current;

Water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

4) Water under the ground surface pressing on, or flowing or seeping through:

a) Foundations, walls, floors or paved surfaces;

b) Basements, whether paved or not; or

c) Doors, windows or other openings.

5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs (g)1), 3) or 4), or material carried or otherwise moved by mudslide or mudflow as described in Paragraph (g)2).

This exclusion applies regardless of whether any of the above in Paragraphs (g)1) through (g)5) is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

However, if any of the above, as described in Paragraphs (g)1) through (g)5), results in fire, explosion or sprinkler leakage, we will pay for that portion of "loss" caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**(h) "Fungi", Wet Rot, Dry Rot, and Bacteria**

1) Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria. But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FM 101 05 16

Page 7 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000030 of 000062

David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
70265944

2) This exclusion does not apply:

   a) When "fungi", wet or dry rot or bacteria results from fire or lightning; or

   b) To the extent that coverage is provided in **SECTION A. COVERAGE, 5. Coverage Extensions, g. "Fungi", Wet Rot, Dry Rot and Bacteria - Limited Coverage** with respect to "loss" from a cause of loss other than fire or lightning.

Exclusions **b.(1)(a)** through **b.(1)(h)** apply whether or not the "loss" event results in widespread damage or affects a substantial area.

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

**(a) Electrical Current**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

1) Electrical or electronic wire, device, appliance, system or network; or

2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

1) Electrical current, including arcing;

2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

3) Pulse of electromagnetic energy; or

4) Electromagnetic waves or microwaves.

However, if fire results, we will pay for "loss" caused by that fire.

**(b) Delay or Loss of Use**

Delay, loss of use or loss of market.

**(c) Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**(d) Miscellaneous Causes of Loss**

1) Wear and tear;

2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

3) Smog;

4) Settling, cracking, shrinking or expansion;

5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

7) The following causes of loss to personal property:

   a) Marring or scratching;

   b) Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, a. Change in Temperature or Humidity** and **5. Coverage Extensions, q. Utility Services;**

      i) Dampness or dryness of atmosphere; and

      ii) Changes in or extremes of temperature.

However, if an excluded cause of loss listed in **(2)(d)1)** through **7)** results in a "specified cause of "loss" or building glass breakage, we will pay for that portion of "loss" caused by that "specified cause of loss" or building glass breakage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000031 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265116

**(e) Explosion of Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for that portion of "loss" caused by that fire or combustion explosion. We will also pay for "loss" caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(f) Water Seepage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

**(g) Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

1) You did your best to maintain heat in the building or structure; or

2) You drained the equipment and shut off the supply if the heat was not maintained.

**(h) Dishonest or Criminal Acts**

Dishonest or criminal acts (including theft) by you, any of your partners, members (if a limited liability company), officers, managers, employees (including leased workers or temporary employees) directors, trustees, or authorized representatives; whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during the hours of operation.

This **Dishonest or Criminal Acts** exclusion does not apply to acts of destruction by your employees (including leased workers or temporary employees) or by authorized representatives; except theft by employees (including leased workers or temporary employees) is not covered.

**(i) Voluntary Parting Under False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(j) Exposure to Weather**

Rain, snow, ice or sleet to personal property in the open.

**(k) Collapse**

Collapse, including any of the following conditions of property or any part of the property:

1) An abrupt falling down or caving in;

2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph (k)1) or 2) above.

But if collapse results in a Covered Cause of Loss at the "premises", we will pay for "loss" caused by that Covered Cause of Loss.

This exclusion **Collapse** does not apply:

1) To the extent that coverage is provided under the **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse**; or

2) To collapse caused by one or more of the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FM 101 05 16

Page 9 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000032 of 000062

a) The "specified causes of loss";

b) Breakage of building glass;

c) Weight of rain that collects on a roof; or

d) Weight of people or personal property.

**(l) Pollutants**

Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

This exclusion does not apply to "loss" to glass caused by chemicals applied to the glass.

**m) Loss or Damage to Product**

We will not pay for "loss" to Covered Property consisting of merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for "loss" caused by that Covered Cause of Loss.

**(n) Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

(3) We will not pay for "loss" caused by or resulting from any of the following in Paragraphs (3)(a) through (3)(c). However, if an excluded cause of loss that is listed in Paragraphs (3)(a) through (3)(c) results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

**(a) Weather Conditions**

Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(a)** through **(1)(h)** to produce the "loss".

**(b) Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(c) Defects, Errors, and Omissions**

1) An act, error, or omission (negligent or not) relating to:

a) Land use;

b) Design, specifications, construction, workmanship;

c) Planning, zoning, development, surveying, siting, grading, compaction; or

d) Maintenance, installation, renovation, repair, or remodeling

of part or all of any property on or off the "premises";

2) A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property on or off the "premises"; or

3) The cost to make good any error in design.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000033 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265/6

**(4) Special Exclusions**

The Special Exclusions apply only to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;** and if attached to this policy, the following coverage forms: **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** and **EXTRA EXPENSE COVERAGE FORM.**

We will not pay for:

**(a)** Any "loss" caused by or resulting from:

   **1)** Damage or destruction of "finished stock"; or

   **2)** The time required to reproduce "finished stock".

This Exclusion (4)(a) does not apply to Extra Expense.

**(b)** Any "loss" caused by or resulting from damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(c)** Any increase of "loss" caused by or resulting from:

   **1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   **2)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such "loss" that affects your "Business Income" during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period of Indemnity Optional Coverage or any variation of these.

**(d)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(e)** Any other indirect "loss".

**c. Limitations**

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS,** unless otherwise stated:

**(1) Limitations - Various Types of Property**

We will not pay for "loss" to property as described and limited in this section. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in this section.

**(a) Steam Apparatus**

Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for "loss" to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(b) Hot Water Boilers**

Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(c) Building Interiors**

The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   **1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   **2)** The "loss" is caused by or results from thawing of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000034 of 000062

Filed      20–CI–006955      12/02/2020      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

snow, sleet or ice on the building or structure.

### (d) Theft of Building Materials

Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

1) Building materials and supplies held for sale by you; or

2) "Business Income" coverage or Extra Expense coverage.

### (e) Missing Property

Property that is missing, where the only evidence of the "loss" is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

### (f) Transferred Property

Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

### (g) Vegetative Roofs

Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

2) Changes in or extremes of temperature;

3) Disease;

4) Frost or hail; or

5) Rain, snow, ice or sleet.

### (2) Limitations – Various Property for Specified Causes

We will not pay for "loss" to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(a) Animals, and then only if they are killed or their destruction is deemed necessary.

(b) Contractors' equipment, machinery and tools owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

1) If the property is located on or within 1,000 feet of the "premises"; or

2) To Business Income coverage or to Extra Expense coverage.

### (3) Limitation – Personal Property Theft

This Limitation does not apply to "Business Income" coverage or to Extra Expense coverage. For each category described in Paragraph c.(3)(a) through (3)(d) below, the most we will pay for "loss" in any one occurrence of theft to all property in that category, regardless of the types or number of articles for that category that are lost or damaged in that occurrence, are the following special limits:

(a) $2,500 for Furs, fur garments and garments trimmed with fur.

(b) $2,500 for Jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limitation does not apply to jewelry and watches worth $100 or less per item.

(c) $2,500 for Patterns, dies, molds and forms.

(d) $250 for Stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are not additional Limits of Insurance.

### (4) Limitation – System or Appliance Defects

(a) We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes; and

(b) We will not pay to replace the substance that escapes as described in Paragraph c.(4)(a) above.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000035 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

However, this Limitation **c.(4)(a)** does not apply to "Business Income" Coverage or to Extra Expense Coverage.

**4. Additional Coverages**

Unless stated otherwise, **SECTION C. DEDUCTIBLE** does not apply to Paragraph **4. Additional Coverages.**

Unless stated otherwise, these Paragraph **4. Additional Coverages** apply on a per location basis.

**a. Change in Temperature or Humidity**

We will pay for direct "loss" to your covered Business Personal Property caused by a change in temperature or humidity or contamination by refrigerant resulting from damage by a Covered Cause of Loss to equipment used for refrigerating, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power (including their connections and supply or transmission lines and pipes) when located on the "premises".

This Coverage is included within the Limits of Insurance shown in the Declarations.

**b. Debris Removal**

(1) Subject to Paragraphs **b.(2), (3)** and **(4)** of this Additional Coverage, we will pay your expense to remove debris of Covered Property and other debris that is on the "premises", when such debris is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct "loss".

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water;

(b) Remove, restore or replace polluted land or water;

(c) Remove debris of property of yours that is not insured under this Coverage Part, or property in your possession that is not Covered Property;

(d) Remove debris of property owned by or leased to the landlord of the building where your "premises" are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Part;

(e) Remove any property that is Property Not Covered, including property addressed under **5. Coverage Extensions, k. Outdoor Property.**

(f) Remove property of others of a type that would not be Covered Property under this Coverage Part;

(g) Remove deposits of mud or earth from the grounds of the "premises".

(3) Subject to the exceptions in Paragraph **b.(4)** below, the following provisions apply:

(a) The most we will pay for the total of direct "loss" plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained "loss".

(b) Subject to Paragraph **b.(3)(a)**, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

(4) We will pay up to an additional $10,000 for debris removal expense for each "premises", in any one occurrence of direct "loss" to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct "loss" exceeds the Limit of Insurance on the Covered Property that has sustained "loss".

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

Therefore, if Paragraph **b.(4)(a)** and/or **(4)(b)** apply, our total payment for direct

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000038 of 000062

"loss" and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained "loss", plus $10,000.

**(5) Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $50,000 |
| Amount of "Loss" Payable ($50,000 - $500) | $49,500 |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable ($10,000 is 20% of $50,000) | $10,000 |

The debris removal expense is less than 25% of the sum of the "loss" payable plus the deductible. The sum of the "loss" payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

**Example #2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $80,000 |
| Amount of "Loss" Payable ($80,000 - $500) | $79,500 |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows:  $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the "loss" payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($30,000) exceeds 25% of the "loss" payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the "loss" payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph (4). Thus the total payable for debris removal ex-

pense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**c.   Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability, which is determined prior to the direct "loss", for fire department service charges:

**(1)**   Assumed by contract or agreement; or

**(2)**   Required by local ordinance.

Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**d.   Fire Protection Equipment Recharge**

**(1)**   We will pay for the expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers when the equipment is discharged:

**(a)**   To combat a covered fire to which this insurance applies;

**(b)**   As a result of another covered Cause of Loss other than fire; or

**(c)**   As a result of an accidental discharge.

**(2)**   We will not pay your expenses to recharge fire protection equipment as a result of a discharge during testing or installation.

**(3)**   If it is less expensive to do so, we will pay your costs to replace your automatic fire suppression system or portable fire extinguishers rather than recharge that equipment.

The most we will pay in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**e.   Inventory or Appraisal**

**(1)**   We will pay the necessary expenses you incur to prepare claim information as required by this Coverage Part. Expenses must result from:

**(a)**   Taking inventories;

**(b)**   Making appraisals; and

FM 101 05 16                    Includes copyrighted material of Insurance
                               Services Office, Inc., with its permission.                    Page 14 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000037 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
20-CI-006955

(c) Preparing a statement of loss and other supporting exhibits.

(2) We will not pay for any expenses:

(a) Incurred to prove that "loss" is covered;

(b) Incurred under **SECTION D. LOSS CONDITIONS, 2. Appraisal;**

(c) Incurred for examinations under oath;

(d) Billed by and payable to independent or public adjusters; or

(e) To prepare claims not covered by this Coverage Part.

The most we will pay for any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the shown in the Declarations.

f. **Key and Lock Expense**

(1) If a key or master key is lost, stolen, or damaged, we will pay for:

(a) The actual expense of the new keys; and

(b) The adjustment of locks to accept new keys; or

(c) If required, new locks, including the expense of their installation;

but only for locks at buildings or structures covered by this Coverage Part.

(2) This Coverage does not apply to keys that were given to former employees.

The most we will pay in any one occurrence under this Additional Coverage is Limit of Insurance $1,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

g. **Ordinance or Law**

(1) If a covered building or structure sustains direct "loss" from a Covered Cause of Loss, resulting in the enforcement of or compliance with an ordinance or law that is in force at the time of "loss" and regulates the demolition, construction or repair of buildings or structures, or establishes zoning or land use requirements at the "premises", then subject to **SECTION D, LOSS CONDITIONS, 4. Loss Payment,** we will pay:

(a) Loss of Use of Undamaged Parts of Buildings

The costs you incur to rebuild at the same "premises" any undamaged portion of your building or structure caused by enforcement of or compliance with an ordinance or law requiring demolition of undamaged parts of the same building or structure. We will only pay the costs to satisfy the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

(b) **Demolition Costs**

The costs you incur to demolish and clear the site of undamaged parts of the same building or structure as a result of Paragraph g.(1)(a) above.

(c) **Increased Costs of Construction**

1) For buildings or structures to which **SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies, the increased costs to comply with the minimum standards of an ordinance or law to:

a) Repair or reconstruct damaged portions of that building or structure; and

b) Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

However, this increased cost of construction applies only if the building or structure is repaired, reconstructed or remodeled and is intended for occupancy similar to the building or structure it replaces, unless such occupancy is not permitted by zoning or land use ordinance or law.

2) For this Paragraph g.(1)(c) only, the increased costs to repair or reconstruct the following:

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 15 of 40

Presiding Judge: HON. CHARLES L CUNNINGHAM (630297)

EXH : 000038 of 000062

David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
08266

a) The cost of excava-
tions, grading, backfill-
ing and filling;

b) Foundation of the build-
ing;

c) Pilings;

d) Underground pipes,
flues and drains.

The items listed in Para-
graphs g.2)a) through
g.2)d) above are deleted
from **SECTION A. COVER-
AGE, 2. Property Not
Covered;**

(2) We will not pay for:

(a) Enforcement of or compliance
with any ordinance or law which
requires the demolition, repair,
replacement, reconstruction,
remodeling or remediation of
property due to contamination by
"pollutants" or due to the pres-
ence, growth, proliferation,
spread or any activity of "fungi",
wet or dry rot or bacteria; or

(b) The costs associated with the
enforcement of or compliance
with any ordinance or law which
requires any insured or others to
test for, monitor, clean up, re-
move, contain, treat, detoxify or
neutralize, or in any way re-
spond to, or assess the effects
of "pollutants", "fungi", wet or dry
rot or bacteria.

(3) We will not pay for "loss" due to any
ordinance or law that:

(a) You were required to comply
with before the "loss", even if the
building or structure was un-
damaged; and

(b) With which you failed to comply.

(4) The terms of this Additional Cover-
age apply separately to each building
or structure covered by this Cover-
age Part.

The most we will pay under this Additional
Coverage is $10,000 per building. This is
in addition to the Limit of Insurance
shown in the Declarations for the building
suffering "loss".

h. **Pollutant Clean Up and Removal**

We will pay your expenses to extract "pol-
lutants" from land or water at the "premis-
es" if the discharge, dispersal, seepage,
migration, release, escape or emission of
the "pollutants" is caused by or results
from a Covered Cause of Loss that oc-
curs during the "coverage term". The ex-
penses will be paid only if they are re-
ported to us in writing within 180 days of
the date on which the Covered Cause of
Loss occurs.

This Additional Coverage does not apply
to costs to test for, monitor or assess the
existence, concentration or effects of "pol-
lutants". But we will pay for testing which
is performed in the course of extracting
the "pollutants" from the land or water.

The most we will pay under this Additional
Coverage for each "premises" is $10,000
for the sum of all covered expenses aris-
ing out of Covered Causes of Loss during
each "coverage term". This Coverage is
in addition to the Limit of Insurance
shown in the Declarations.

i. **Preservation of Property**

If it is necessary to move Covered Prop-
erty from the "premises" to preserve it
from imminent "loss" by a Covered Cause
of Loss, we will pay for any direct "loss" to
that property:

(1) While it is being moved or while tem-
porarily stored at another location;
and

(2) Only if the "loss" occurs within 60
days after the property is first moved.

This Coverage is included within Limit of
Insurance shown in the Declarations for
such Covered Property.

j. **Rewards**

We will pay to provide a reward for infor-
mation that leads to a conviction for ar-
son, theft, vandalism, or burglary. The
conviction must involve a covered "loss"
caused by arson, theft, vandalism, or bur-
glary.

The most we will pay for "loss" in any one
occurrence under this Additional Cover-
age is $10,000. This Coverage is in addi-
tion to the Limit of Insurance shown in the
Declarations.

5. **Coverage Extensions**

Unless amended within a particular Coverage
Extension, each Extension applies to property
located in or on the building described in the
Declarations or in the open (or in a vehicle or
portable storage unit) within 1,000 feet of the
"premises".

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000039 of 000062

Filed        20-CI-006955      12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
30063

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance shown in the Property Declarations. Limits of Insurance specified in these Extensions apply per location unless stated otherwise.

**SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, does not apply to these Coverage Extensions.

a. **Accounts Receivable**

   **SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

   (1) When you sustain direct "loss" to your accounts receivable records caused by a Covered Cause of Loss, we will pay:

      (a) All amounts due from your customers that you are unable to collect;

      (b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

      (c) Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

      (d) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

   (2) Coverage does not apply to:

      (a) Records of accounts receivable in storage away from the "premises"; or

      (b) Contraband, or property in the course of illegal transportation or trade.

   (3) We will extend coverage to include:

      (a) Removal

         If you give us written notice within 30 days of removal of your records of accounts receivable because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

         1) At a safe place away from your "premises"; or

         2) Being taken to and returned from that place.

         This Removal coverage is included within the Limit of Insurance applicable to this Coverage Extension.

      (b) Away From Your Premises

         The most we will pay in any one occurrence is $5,000, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to Accounts Receivable while they are away from your "premises".

         This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

   (4) **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

      (a) Exclusion (1)(c) Governmental Action;

      (b) Exclusion (1)(d) Nuclear Hazard;

      (c) Exclusion (1)(f) War and Military Action.

   (5) In addition to Paragraph a.(4) of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

      (a) Dishonest or criminal acts by:

         1) You, your partners, employees, directors, trustees or authorized representatives;

         2) A manager or a member if you are a limited liability company;

         3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

         4) Anyone else entrusted with the records of accounts receivable for any purpose.

         This Paragraph a.(5)(a) applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

         However, this Paragraph a.(5)(a) does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

      (b) Alteration, falsification, concealment or destruction of records of

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 17 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000040 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38865f6

accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(c) Bookkeeping, accounting or billing errors or omissions.

(d) Electrical or magnetic injury, disturbance or erasure of "electronic data" that is caused by or results from:

1) Programming errors or faulty machine instructions;

2) Faulty installation or maintenance of data processing equipment or component parts;

3) An occurrence that took place more than 100 feet from your "premises"; or

4) Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

(e) Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(f) A "loss" that requires any audit of records or any inventory computation to prove its factual existence.

(6) **Determination of Receivables:**

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of direct "loss", the following method will be used:

1) Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the direct "loss" occurs; and

2) Adjust that total for any normal fluctuations in the amount of accounts receiv-

for the month in which the direct "loss" occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

1) The amount of the accounts for which there is no direct "loss"; and

2) The amount of the accounts that you are able to reestablish or collect; and

3) An amount to allow for probable bad debts that you are normally unable to collect; and

4) All unearned interest and service charges.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

b. **Business Income and Extra Expense**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

(1) **Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

(a) Any area within the building or on the site at which the "premises" are located if that area ser-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000041 of 000082

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265

vices or is used to gain access to the "premises"; and

(b) Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

(2) **Extra Expense**

(a) We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs (2)(b), (c) and (d)) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

(b) If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph (2)(c)) to:

1) Avoid or minimize the "suspension" of business and to continue "operations" either:

a) At the "premises"; or

b) At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

2) Minimize the "suspension" of business if you cannot continue "operations".

(c) We will also pay expenses to:

1) Repair or replace property; or

2) Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal

operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

(d) Extra Expense does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM.**

(3) **Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

(a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

(b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:

1) 30 consecutive days after the time of that action; or

2) When your "Business Income" coverage ends;

whichever is later.

(4) **Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

Presiding Judge : HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000042 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38365-3

(a) New buildings or structures, whether complete or under construction;

(b) Alterations or additions to existing buildings or structures; and

(c) Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

    1) Used in the construction, alterations or additions; or

    2) Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" Coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**(5) Newly Purchased or Leased Locations**

We will pay the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" to Covered Property at any location you purchase or lease caused by or resulting from a Covered Cause of Loss. This coverage for the Newly Purchased or Leased Locations will end when any of the following first occurs:

(a) This policy expires;

(b) You report values to us;

(c) 90 days pass from the date you acquire or begin to construct the Covered Property.

**(6) Extended Business Income**

(a) For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or Extra Expense "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur during the period that:

    1) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    2) Ends on the earlier of:

      a) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct "loss" had occurred; or

      b) 60 consecutive days after the date determined in **b.(6)(a)1)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained or Extra Expense incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

(b) For "Rental Value", if the necessary "suspension" of your "operations" produces a "Rental Value" "loss" payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

    1) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    2) Ends on the earlier of:

      a) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

      b) 60 consecutive days after the date determined in **b.(6)(b)1)** above.

      However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

FM 101 05 16

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000043 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(7) Interruption of Computer Operations**

  **(a)** Subject to all provisions of this Coverage Extension, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data.**

  **(b)** Paragraph **b.(7)(a)** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **b.(7)(c)** has not been exhausted.

  **(c)** The most we will pay under Paragraph **b.(7)** of this Coverage Extension is $2,500 for all "loss" sustained and expense incurred in the "coverage term", regardless of the number of interruptions or the number of "premises" or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not carry over to the next "coverage term". With respect to an interruption that begins in a "coverage term" and continues or results in additional "loss" or expense in a subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

This $2,500 coverage for Interruption of Computer Operations does not increase the Limit of Insurance provided in this Coverage Extension.

The most we will pay for "loss" in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $25,000.

  **c.** <u>Collapse</u>

The coverage provided under this Coverage Extension applies only to an abrupt collapse as described and limited in Paragraphs **c.(1)** through **c.(7)** below.

  **(1)** For the purpose of this Coverage Extension only, abrupt collapse means an abrupt falling down or caving in of a building or structure or any part of a building or structure with the result that the building or structure or part of the building or structure cannot be occupied for its intended purpose.

  **(2)** We will pay for direct "loss" to Covered Property, caused by abrupt collapse of a building or structure or any part of a building or structure insured under this Coverage Part, or that contains Covered property under this Coverage Part, if such collapse is caused by one or more of the following:

    **(a)** Building or structure decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

    **(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known or should reasonably have been known to an insured prior to collapse;

    **(c)** Use of defective material or methods in construction, remodeling, or renovation if the abrupt collapse occurs during the course of the construction, remodeling, or renovation.

    **(d)** Use of defective materials or methods in construction, remodeling, or renovation if the abrupt collapse occurs after construction, remodeling, or renovation is complete but only if the collapse is caused in part by:

      1) A cause of loss listed in Paragraph **c.(2)(a)** or **c.(2)(b)** of this Coverage Extension;

      2) One or more of the "specified causes of loss";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000044 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
76765345

3) Breakage of building glass;

4) Weight of people or personal property; or

5) Weight of rain that collects on a roof.

(3) This Coverage Extension does not apply to:

(a) A building or structure or any part of a building or structure that is in danger of falling down or caving in;

(b) A part of a building or structure that is standing, even if it has separated from another part of the building or structure; or

(c) A building or structure that is standing or any part of a building or structure that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(4) With respect to the following property:

(a) Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

(b) Awnings, gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Fences;

(f) Piers, wharves and docks;

(g) Beach or diving platforms; including their appurtenances;

(h) Retaining walls; and

(i) Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraph c.(2)(a) through c.(2)(d), we will pay for "loss" to that property only if:

(a) Such "loss" is a direct result of the abrupt collapse of a building or structure insured under this Coverage Part; and

(b) The property is Covered Property under this Coverage Part.

(5) If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building or structure, we will pay for direct "loss" to Covered Property caused by such collapse of personal property only if:

(a) The collapse of personal property was caused by a Cause of Loss listed in c.(2)(a) through c.(2)(d) of this Coverage Extension;

(b) The personal property that collapses is inside a building; and

(c) The property that collapses is not of a kind listed in Paragraph c.(4) above of this Coverage Extension, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph c.(5) does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

(6) This Coverage Extension does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

(7) This Coverage Extension shall not increase the Limit of Insurance provided in this Coverage Part.

(8) The term Covered Cause of Loss includes Collapse as described and limited in Paragraphs c.(1) through c.(7).

d. **Electronic Data**

(1) This Coverage Extension does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

(2) We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss that applies to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property.** To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the me-

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000045 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
20-CI-006955

dia on which the "electronic data" was stored with blank media of substantially identical type.

**(3)** For the purposes of this Coverage Extension only, Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, that is designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for "loss" caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system or "electronic data".

**(4)** The most we will pay for all direct "loss" under this Coverage Extension, regardless of the number of "premises" or computer systems involved, is $2,500. This limit is the most we will pay for the total of all direct "loss" arising out of all occurrences that take place in the "coverage term". If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent "loss" sustained in the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to an occurrence which begins in the "coverage term" and continues or results in additional "loss" in a subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the occurrence began.

**e.** **Exhibitions, Fairs or Trade Shows**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered property of others, while it is located at exhibitions, fairs or trade shows. This Coverage Extension does not apply while Covered Property is in transit to or from the exhibition, fair or trade show.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided under this Coverage Extension does not apply per location.

**f.** **Fences**

We will pay for direct "loss" caused by a Covered Cause of Loss to your outdoor fences that are located within 1,000 feet of the "premises" and not otherwise insured as Covered Property in this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**g.** **Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

**(1)** The coverage described in Paragraphs g.(2) and g.(3) of this Coverage Extension only apply when the "fungi", wet or dry rot or bacteria is the result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for "loss" by "fungi", wet or dry rot or bacteria. As used in this Coverage Extension, the term "loss" means:

**(a)** Direct "loss" to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

**(3)** For the coverage described under Paragraph g.(2) of this Coverage Extension, the most we will pay for "loss", regardless of the number of claims, is $15,000. This limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be pre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000046 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38316

sent or active, or recurs, in a subsequent "coverage term".

(4) The coverage provided under this Coverage Extension does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in "loss" by "fungi", wet or dry rot or bacteria, and other "loss", we will not pay more, for the total of all "loss" than the applicable Limit of Insurance on the affected Covered Property.

If there is covered "loss" to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Coverage Extension, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the "loss". Any such increase in the "loss" will be subject to the terms of this Coverage Extension.

(5) The terms of this Coverage Extension do not increase or reduce the coverage provided under:

(a) **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse;**

(b) **SECTION A. COVERAGE, 5. Coverage Extensions, s. Water, Other Liquids, Powder or Molten Material Damage**

(6) The following (6)(a) or (6)(b) apply only if "Business Income", "Rental Value", or Extra Expense Coverage applies to the "premises" and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable "Business Income", "Rental Value", or Extra Expense Coverage.

(a) If the "loss" which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to "loss" to property caused by "fungi", wet or dry rot or bacteria, then our payment under "Business Income" and/or Extra Expense is limited to the amount of "loss" and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered "suspension" of "operations" was caused by "loss" other than "fungi", wet or dry rot or bacteria but remedia-

tion of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for "loss" and/or expense sustained during the delay (regardless of when such delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

(7) This Coverage Extension does not apply to lawns, trees, plants or shrubs that are part of any vegetative roof.

h. **Glass**

(1) If a Covered Cause of Loss occurs to building glass that is Covered Property, we will also pay necessary expenses you incur to:

(a) Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

(b) Repair or replace encasing frames;

(c) Remove or replace obstructions (except expenses to remove or replace window displays); and

(d) Repair or replace alarm tapes.

(2) If you are a tenant at a covered "premises" and:

(a) The building you occupy is not Covered Property; and

(b) You are legally liable for direct "loss" to the building glass in that building;

such building glass, for the purposes of this Paragraph h.(2), is Covered Property. The most we will pay for "loss" in any one occurrence is $5,000. This building glass is subject to the building deductible as described in **SECTION C. DEDUCTIBLE.**

(3) For the purposes of this Coverage Extension only, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

(a) **Exclusion (1)(b) Earth Movement;**

(b) **Exclusion (1)(c) Governmental Action;**

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000047 of 000062

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

(c) Exclusion (1)(d) Nuclear Hazard;

(d) Exclusion (1)(f) War and Military Action;

(e) Exclusion (2)(d)1. Wear and tear; and

(f) As listed in **Exclusion (2)(d)2.** Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

i. **Newly Purchased, Leased or Constructed Property**

(1) **Buildings**

If buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

(a) Your new buildings or additions while being built on the "premises";

(b) Buildings you newly purchase or become newly required to insure by written contract that are:

1) Intended for use by you as a warehouse; or

2) Similarly used by you as buildings insured under this Coverage Part.

The most we will pay for "loss" in any one occurrence to a building under this Coverage Extension is 1,000,000 for each building.

(2) **Business Personal Property**

(a) If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to business personal property you newly purchase or are required to insure by written contract:

1) While located at buildings described in Paragraph a.(1) of this Coverage Extension; or

2) While located in a leased building or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

3)(b) Paragraph a.(2)(a) of this Coverage Extension does not apply to:

1) Any business personal property covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions,** e. **Exhibitions, Fairs, or Trade Shows** or m. **Property Off Premises;**

2) Any business personal property that is covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions,** p. **Transportation** or is otherwise considered to be in-transit to or from a "premises".

3) Business personal property of others that is temporarily in your possession in the course of installing or performing work on such property, or temporarily in your possession in the course of your manufacturing or wholesaling activities.

The most we will pay for "loss" in any one occurrence to your Business Personal Property under this Coverage Extension is $500,000 at each building.

(3) **Period of Coverage**

Coverage provided under this Coverage Extension will end when any of the following first occurs:

(a) This policy expires,

(b) For buildings described in Paragraph **(1)(a)** of this Coverage Extension, 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

(c) For business property described in Paragraph **(1)(b)** and Paragraph **(2)(a)1,** 90 days after your purchase or lease;

(d) For business personal property described in Paragraph **(2)(a)2,** 90 days from the effective date

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000046 of 000062

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 25 of 40

of the lease of the building space in the building; or

(e) You report values to us.

We will charge you additional premium for values reported from the date you lease or purchase the property, or begin construction on that part of the building that would qualify as Covered Property.

**j.   Nonowned Building Damage**

If you are a tenant at a covered "premises" and:

(1) The building you occupy is not Covered Property; and

(2) You are legally liable for direct "loss" to that building;

We will pay for direct "loss" to that building caused by burglary, robbery, theft or attempted theft.

This Coverage Extension does not apply to:

(1) Glass, including lettering and ornamentation, and also necessary:

   (a) Repair or replacement of encasing frames or alarm tapes; and

   (b) Expenses incurred to board up openings or remove or replace obstruction.

(2) Building materials and equipment removed from the "premises".

This Coverage Extension does not apply if you have purchased other insurance in your name on the building you occupy as required by the lease.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**k.   Outdoor Property**

We will pay for direct "loss" caused by a Covered Cause of Loss to the following types of your Covered Property:

(1) Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers);

(2) Trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or part of a vegetative roof), including debris removal ; and

(3) If you are a tenant, to your awnings that are attached to a building you occupy;

but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion;

(5) Aircraft; or

(6) Falling objects.

We will pay for the debris removal expenses of the above type property that are not your Covered Property if such debris is on your "premises" due to the Covered Causes of Loss described in this Coverage Extension. If you are a tenant, we do not pay debris removal expenses for trees, plants or shrubs owned by the landlord or owner of the building you occupy.

No other coverage for debris removal expenses provided in this Coverage Part applies to this Outdoor Property Coverage Extension.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000, but not more than $1,000 for any one tree, shrub or plant.

**l.   Personal Effects**

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to personal effects owned by:

(1) You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

(2) Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business. However, employee tools are not covered for theft.

This Coverage Extension does not apply to "money" or "securities".

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $500 per occurrence limitation for direct "loss" by theft.

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 26 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 00048 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38769

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

**m. Property Off Premises**

(1) We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others, while it is away from the "premises", if it is:

  (a) Temporarily at a location you do not own, lease or operate; or

  (b) In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

(2) This Coverage Extension does not apply to Covered Property at exhibitions, fairs, trade show, or in transit.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**n. Signs**

We will pay for direct "loss" caused by a Covered Cause of Loss, including debris removal expense, to signs not otherwise insured by this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**o. Trailers (Nonowned Detached)**

(1) If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to trailers that you do not own, provided that:

  (a) The trailer is used in your business;

  (b) The trailer is temporarily in your care, custody or control at the "premises"; and

  (c) You have a contractual responsibility to pay for "loss" to the trailer.

(2) We will not pay for any direct "loss" that occurs:

  (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

  (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) This insurance is excess over the amount due, whether you can collect on it or not, from any other insurance covering such property.

(4) This Coverage Extension does not apply to any property inside or on the trailer.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**p. Transportation**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**q. Utility Services**

We will pay for:

(1) Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

(2) Loss of "Business Income" you sustain and Extra Expenses you incur as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

(1) Power Supply Property, meaning the following types of property supplying

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000050 of 000062

David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

electricity, steam or natural gas to the "premises":

  **(a)** Utility generating plants;

  **(b)** Switching stations;

  **(c)** Substations;

  **(d)** Transformers; and

  **(e)** Transmission, distribution, service, or similar lines, excluding all such overhead lines of any type.

**(2)** Water Supply Property, meaning the following types of property supplying water to the "premises":

  **(a)** Pumping stations; and

  **(b)** Water mains.

**(3)** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**(4)** Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular or satellite network; telephone, radio, microwave or television services to the "premises", such as:

  **(a)** Communication transmission, distribution, service or similar lines, including fiber optic lines, excluding all such overhead lines of any type;

  **(b)** Coaxial cables; and

  **(c)** Microwave radio relays, excluding satellites.

This Coverage Extension does not apply to "loss" to "electronic data", including destruction or corruption of "electronic data".

The most we will pay for all direct "loss" and loss of "Business Income" and Extra Expense in any one occurrence is $25,000.

**r.   Valuable Papers and Records**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** Subject to Paragraph r.**(3)** of this Coverage Extension, we will pay necessary costs you incur to research, replace or restore lost or damaged information on "valuable papers and records" that are your property or the property of others in your care, custody or control; resulting from direct "loss" caused by a Covered Cause of Loss.

**(2)** Coverage does not apply to:

  **(a)** Property that cannot be replaced with other property of like kind and quality;

  **(b)** Property held as samples or for delivery after sale;

  **(c)** Property in storage away from the "premises", except as provided in Paragraph r.**(4)(b)** of this Coverage Extension;

  **(d)** Contraband, or property in the course of illegal transportation or trade;

  **(e)** "Valuable papers and records" in the form of "electronic data", including the materials on which the "electronic data" is recorded.

**(3)** The most we will pay for "loss" is the least of the following amounts:

  **(a)** The cost of reasonably restoring the damaged property to its condition immediately before the "loss";

  **(b)** The cost of replacing the damaged property with substantially identical property; or

  **(c)** The actual cash value of the damaged property at the time of "loss".

However, we will not pay for "loss" unless or until the damaged property is actually replaced or restored; and then only if such replacement or restoration occurs within 36 months from the date of direct "loss".

**(4)** We will extend coverage to include:

  **(a)** **Removal**

    If you give us written notice within 30 days of removal of your "valuable papers and records"

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000051 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38265:16

because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for direct "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limits of Insurance applicable to this Coverage Extension.

**(b) Away From Your Premises**

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for direct "loss" caused by a Covered Cause of Loss to "valuable papers and records" while they are away from your "premises".

This Away From Premises limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(5) SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a) Exclusion (1)(c) Governmental Action;**

**(b) Exclusion (1)(d) Nuclear Hazard; and**

**(c) Exclusion (1)(f) War and Military Action.**

**(6)** In addition to Paragraph **r.(5)** of this Coverage Extension, we will not pay for direct "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **r.(6)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **r.(6)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Errors or omissions in processing or copying. However, we will pay for that portion of direct "loss" caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Part.

**(c)** Electrical or magnetic injury, disturbance or erasure of electronic recordings. But we will pay for direct "loss" caused by lightning.

**(d)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay for "loss" in any one occurrence is $25,000.

**s.** **Water Damage, Other Liquids, Powder or Molten Material Damage**

If a covered direct "loss" to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material damage, we will also pay the cost to tear out and replace any otherwise undamaged part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as amended in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, 4. Additional Coverages,** and **5. Coverage Extensions.**

**SECTION C. DEDUCTIBLE**

Except as otherwise provided; in any one occurrence of direct "loss" we will first reduce the amount of "loss" if required by **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** or **SECTION F. OPTIONAL COVERAGES, 1. Agreed Value.** If the adjusted amount of direct "loss" is less than or equal to the Deductible, we will not pay for that direct "loss". If the adjusted amount of direct "loss" exceeds the Deductible, we will then

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000052 of 000062

subtract the Deductible from the adjusted amount of direct "loss", and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves direct "loss" to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

1. **Deductible Examples**

   **Example No. 1:**

   (This example assumes there is no coinsurance penalty as outlined in **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**).

   Deductible:                          $250

   Limit of Insurance - Bldg. 1:        $60,000
   Limit of Insurance - Bldg. 2:        $80,000

   "Loss" to Bldg. 1:                   $60,100
   "Loss" to Bldg. 2:                   $90,000

   The amount of "loss" to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

   The Deductible will be subtracted from the amount of "loss" in calculating the "loss" payable for Bldg. 1:

   $60,100 - $250 = $59,850 "Loss" Payable - Bldg. 1

   The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of "loss" payable for Bldg. 2. "Loss" payable for Bldg. 2 is the Limit of Insurance of $80,000.

   Total amount of "loss" payable:   $59,850 + 80,000 = $139,850.

   **Example No. 2:**

   (This example also assumes there is no coinsurance penalty).

   The Deductible and Limits of Insurance are the same as those in Example No. 1:

   "Loss" to Bldg. 1: $70,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" to Bldg. 2: $90,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" Payable - Bldg. 1: $60,000 (Limit of Insurance)

   "Loss" Payable - Bldg. 2: $80,000 (Limit of Insurance)

   Total amount of "loss" payable: $140,000.

2. **Glass Deductible**

   When direct "loss" to the building you occupy only involves building glass, the Deductible for that "loss" will be the lesser of:

   a. $500; or

   b. The Deductible shown in the Declarations for that Covered Property.

**SECTION D. LOSS CONDITIONS**

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

   a. In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

      (1) Notify the police if a law may have been broken.

      (2) Give us prompt notice of the "loss". Include a description of the property involved.

      (3) As soon as possible, give us a description of how, when and where the "loss" occurred.

      (4) Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 30 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000053 of 000062

record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

(7) Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b.  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4.  Loss Payment**

a.  In the event of "loss" insured by this Coverage Part, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

b.  The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

c.  We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d.  We will not pay you more than your financial interest in the Covered Property.

e.  We may adjust "losses" with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f.  Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

g.  We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

h.  We will pay for insured "loss" within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

(1) We have reached agreement with you on the amount of "loss"; or

(2) An appraisal award has been made.

i.  **Loss Payment - Ordinance or Law.**

With respect to **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law:**

(1) **Loss of Use of Undamaged Parts of Building**

When there is a loss in value of an undamaged portion of a building or structure to which this coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 31 of 40

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000054 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

(a) If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is repaired or replaced, on the same "premises" or another "premises"; we will not pay more than the lesser of:

1) The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same "premises" and to the same height, floor area, style and comparable quality of the original property insured; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages g. Ordinance or Law for Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

(b) If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

1) The "actual cash value" of the building at the time of "loss"; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law for Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

(2) **Demolition Costs**

Loss payment for Demolition Costs will be determined as follows:

We will not pay more than the lesser of the following:

(a) The amount you actually spend to demolish and clear the site of the "premises"; or

(b) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law for Demolition Costs** for the building that has suffered "loss".

(3) **Increased Costs of Construction**

Loss payment for **Increased Costs of Construction** will be determined as follows:

(a) We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same "premises" or another location and unless the repairs or replacement are made as soon as reasonably possible after the direct "loss", not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another "premises", the most we will pay for the **Increased cost of construction** is the lesser of:

1) The increased cost of construction at the same "premises"; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law for Increased Costs of Construction** for the building that has suffered "loss".

(c) If the ordinance or law requires relocation to another location the most we will pay for the increased cost of construction is the lesser of:

1) The increased cost of construction at the new location; or

2) The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law for Increased Costs of Construction** for the building that has suffered "loss".

(4) **Proportional Payments**

If the building or structure sustains both direct "loss" that is covered un-

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000055 of 000062

Filed          20-CI-006955          12/02/2020          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM
38266a0

der this Coverage Part and direct "loss" that is not covered under this Coverage Part; and as a result of the direct "loss" in its entirety you are required to comply with the ordinance or law, we will not pay the full amount of direct "loss" otherwise payable under the terms of **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**. Instead, we will pay a proportion of such direct "loss"; meaning the proportion that the covered direct "loss" bears to the total direct "loss".

j.  **Loss Determination - Business Income and Extra Expense**

With respect to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,**

(1) The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

(a) The Net Income of the business before the direct "loss" occurred;

(b) The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(c) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

(d) Other relevant sources of information, including;

1) Your financial records and accounting procedures;

2) Bills, invoices and other vouchers; and

3) Deeds, liens or contracts.

(2) The amount of Extra Expense will be determined based on:

(a) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct "loss"

occurred. We will deduct from the total of such expenses:

1) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

2) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(b) Necessary expenses that reduce the "Business Income" and "Rental Value" "loss" that otherwise would have been incurred.

(3) **Resumption of Operations**

We will reduce the amount of your:

(a) "Business Income" and "Rental Value" "loss", other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the "premises" or elsewhere.

(b) Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

(4) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

k.  **Party Walls**

A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the "loss" to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the "loss" to the party wall, subject to all applicable policy provisions all other provisions of this **SECTION D. LOSS CONDITIONS, 4. Loss Payment** including:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000056 of 000062

(1) Limit of Insurance shown in the Declarations;

(2) **SECTION D. LOSS CONDITIONS, 7. Valuation;** and

(3) **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance.**

Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **COMMERCIAL PROPERTY CONDITIONS, I. Transfer Of Rights Of Recovery Against Others To Us** in this Coverage Part.

5. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6. **Vacancy**

   a. **Description of Terms**

   (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

   (a) When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

   (b) When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

   1) Rented to a lessee or sublessee and used by them to conduct their customary operations; or

   2) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

   b. **Vacancy Provisions**

If the building where direct "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

   (1) Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

   (a) Vandalism;

   (b) Sprinkler leakage, unless you have protected the system against freezing;

   (c) Building glass breakage;

   (d) Water damage;

   (e) Theft; or

   (f) Attempted theft.

   (2) Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** of this Loss Condition.

7. **Valuation**

We will determine the value of Covered Property in the event of direct "loss" as follows:

   a. At "Actual Cash Value" as of the time of direct "loss", except as provided in **b., c., d.,** and **e.** below.

   b. If the Limit of Insurance for Building satisfies **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance,** and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

   The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at actual cash value even when attached to the building:

   (1) Awnings or floor coverings;

   (2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

   (3) Outdoor equipment or furniture.

   c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000057 of 000062

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Replacement Cost of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**(4)** For the purposes of valuation, tenants' improvements and betterments are not considered to be the personal property of others.

## SECTION E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any "loss" if the value of Covered Property at the time of direct "loss" times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of direct "loss" by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

**(3)** Multiply the total amount of "loss", before the application of any deductible, by the figure determined in step **(2)**; and

**(4)** Subtract the deductible from the figure determined in step **(3)**.

We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

**Example No. 1 (Underinsurance):**

The value of the property is:          $250,000
The coinsurance percentage is:          80%
The Limit of Insurance is:          $100,000
The Deductible is:          $250
The amount of "loss" is:          $40,000

**Step (1):**

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

**Step (2):**

$100,000 divided by $200,000 = .50

**Step (3):**

$40,000 X .50 = $20,000

**Step (4):**

$20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

The value of the property is:          $250,000
The coinsurance percentage is:          80%
The Limit of Insurance is:          $200,000
The Deductible is:          $250
The amount of "loss" is:          $40,000

**Step (1):**

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

**Step (2):**

$200,000 : $200,000 = 1.00

**Step (3):**

$40,000 X 1.00 = $40,000

**Step (4):**

$40,000 - $250 = $39,750.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000058 of 000062

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

We will pay no more than $39,750 "loss" in excess of the Deductible. No penalty applies.

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

The values of the property are:

| | |
|---|---|
| Bldg. at Location No. 1: | $75,000 |
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2: | $75,000 |
| | 250,000 |

| | |
|---|---|
| The coinsurance percentage is: | 90% |

The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is: $180,000
The Deductible is: $1,000
The amount of "loss" is:

| | |
|---|---|
| Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| | $50,000 |

Step (1):

$250,000 X 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):
$180,000 : $225,000 = .80

Step (3):
$50,000 X .80 =  $40,000

Step (4):

$40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2.  Mortgage Holders**

a. The term "mortgage holder" includes trustee.

b. We will pay for covered "loss" to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply

with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

e. If we pay the mortgage holder for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

**SECTION F. OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000059 of 000062

1. **Agreed Value**

   a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for direct "loss" to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Limit of Insurance indicated in the most current Statement of Values that applies to this Coverage Part.

   b. If the Agreed Value Optional Coverage is deleted from the policy, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage does not apply.

   c. The terms of this Optional Coverage apply only to "loss" that occurs:

      (1) On or after the effective date of this Optional Coverage; and

      (2) Before the policy expiration date.

   d. This Agreed Value Optional Coverage does not apply to SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.

2. **Inflation Guard**

   a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Limit of Insurance that applied on the beginning of the current "coverage term" or any other Coverage Part change amending the Limit of Insurance, multiplied by

      (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), multiplied by

      (3) The number of days since the beginning of the current "coverage term" or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365. In the event of "loss", this number of days ends at the original date of "loss".

      Example:

      If: The applicable Limit of Insurance is: $100,000

         The Annual percentage increase is: 8%

The number of days since the beginning of the policy year (or last policy change) is: 146

The amount of increase is $100,000 X .08 X (146/365) = $3,200

3. **Replacement Cost**

   a. Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in SECTION D. LOSS CONDITIONS, 7. Valuation of this BUILDING AND PERSONAL PROPERTY COVERAGE FORM.

   b. This Optional Coverage does not apply to:

      (1) Personal Property of others, except leased personal property as described in SECTION A. COVERAGE, 1. Covered Property, d.(7). The valuation of such leased personal property will be based on the amount for which you are liable under the lease, but not to exceed the replacement cost of the leased item.

      (2) Personal effects;

      (3) Contents of a residence;

      (4) Manuscripts;

      (5) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;

      (6) "Stock" unless the Replacement Cost including "Stock" option is shown in the Declarations; or

      (7) Property, that at the time of "loss":

         (a) Is outdated, or obsolete and is stored or not being used; or

         (b) Has no practical value to you.

   c. You may make a claim for "loss" covered by this insurance on an "Actual Cash Value" basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "Actual Cash Value" basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the "loss".

   d. We will not pay on a replacement cost basis for any "loss":

      (1) Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same

FM 101 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 37 of 40

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

purpose as the lost or damaged property; and

(2) Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

e. We will not pay more for "loss" on a replacement cost basis than the least of:

  (1) The Limit of Insurance applicable to the lost or damaged property;

  (2) The cost to replace, on the same "premises", the lost or damaged property with other property:

    (a) Of comparable material and quality; and

    (b) Used for the same purpose; or

  (3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any building or structure except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

## SECTION G. DEFINITIONS

1. "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

2. "Business Income" means the:

  a. Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

  b. Continuing normal operating expenses sustained, including payroll.

3. "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

4. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

  a. The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if

any period is of a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

  (1) The day the policy period shown in the Declarations ends; or

  (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

  b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

5. "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

6. "Finished stock" means stock you have manufactured, except "stock" you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

7. "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

8. "Loss" means accidental physical loss or accidental physical damage.

9. "Money" means:

  a. Currency, coins and bank notes whether or not in current use; and

  b. Travelers checks, registered checks and money orders held for sale to the public.

10. "Operations" means:

  a. Your business activities occurring at the "premises"; and

  b. The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

11. "Period of restoration" means the period of time that:

  a. Begins at the time of direct "loss".

  b. Ends on the earlier of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000061 of 000082

NOT ORIGINAL DOCUMENT
12/04/2020 10:46:37 AM

(1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

c. "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

d. The expiration date of the policy will not cut short the "period of restoration".

12. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

a. You are regularly or otherwise engaged in activities which taint or degrade the environment; or

b. You use, generate or produce the "pollutant".

13. "Premises" means the Locations and Buildings described in the Declarations.

14. "Rental Value" means "Business Income" that consists of :

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

b. Continuing normal operating expenses incurred in connection with that "premises", including:

(1) Payroll; and

(2) The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

15. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps whether or not in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which are not of your own issue; but does not include "money". Lottery tickets held for sale are not "securities" or evidences of debt.

16. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. This does not include:

a. The cost of filling sinkholes;

b. Sinking or collapse of land into man-made subterranean cavities; or

c. The value of the land.

17. "Specified causes of loss" means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

a. Falling objects does not include "loss" to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

b. Water damage means:

(1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

(2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the "premises" and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

FM 101 05 16          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 39 of 40

Filed          20-CI-006955          12/02/2020          David L. Nicholson, Jefferson Circuit Clerk
                                                          NOT ORIGINAL DOCUMENT
                                                          12/04/2020 10:48:24 AM
                                                          38265-6

# EXHIBIT B

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000001 of 000010

Filed        20–CI–006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:48:24 AM
28365

# BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F. DEFINITIONS.**

## SECTION A. COVERAGE

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

a. "Business Income" including "Rental Value".

b. "Business Income" other than "Rental Value".

c. "Rental Value".

If option a. above is selected, the term "Business Income" will include "Rental Value". If option c. above is selected, the term "Business Income" will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

1. <u>Business Income</u>

a. We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open (or personal property in a vehicle or portable storage unit), the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

b. With respect to the requirements set forth in the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

(1) Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the described "premises".

(2) Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

2. <u>Covered Causes of Loss</u>

See BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss.

3. <u>Limitation for Electronic Data</u>

a. Coverage for "Business Income" does not apply when a "suspension" of "operations" is caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under SECTION A. COVERAGE, 4. Additional Coverages, e. Interruption of Computer Operations.

b. This Limitation does not apply when "loss" to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

4. <u>Additional Coverages</u>

The Additional Coverages in Paragraph 4.a. through Paragraph 4.f. are included within and are not additional "Business Income" Limits of Insurance.

a. <u>Expenses to Reduce Loss</u>

(1) In the event of a covered loss of "Business Income" we will pay necessary expenses you sustain, except the cost of extinguishing a fire, to avoid further loss of "Business Income". The total of our payment for loss of "Business Income" and Expenses to Reduce Loss will not be more than the loss of "Business Income" that would have been payable

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000002 of 000010

FA 212 05 16              Includes copyrighted material of Insurance Services Office, Inc., with its permission.              Page 1 of 9

under this Coverage Part (after application of any Coinsurance penalty) if the Expenses to Reduce Loss had not been sustained. This coverage does not increase the Limit of Insurance.

(2) **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply specifically to such Expenses to Reduce Loss, but it is used as described above to determine the total amount payable.

(3) If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Additional Coverage will be reduced by the salvage value of that property.

b. **Civil Authority**

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

c. **Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

d. **Extended Business Income**

(1) "Business Income" Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a "Business Income" "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the "Business Income" amount that would have existed if no direct "loss" had occurred; or

(ii) 60 consecutive days after the date determined in d.(1)(a) above.

However, Extended Business Income does not apply to loss of "Business Income" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

(2) "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you sustain during the period that:

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000003 of 000010

NOT ORIGINAL DOCUMENT
12/04/2020 10:48:24 AM
86045

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

(ii) 60 consecutive days after the date determined in d.(2)(a) above.

However, Extended Business Income does not apply to loss of "Rental Value" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the described "premises" caused by or resulting from any Covered Cause of Loss.

e. **Interruption of Computer Operations**

(1) Subject to all provisions of this Additional Coverage - Interruption of Computer Operations, you may extend the insurance that applies to "Business Income" to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss. This Additional Coverage - Interruption of Computer Operations does not apply when "loss" to "electronic data" only involves "loss" to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

(2) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage - Interruption of Computer Operations is $2,500 for all "loss" sustained in any "coverage term", regardless of the number of interruptions or the number of "premises", locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for "loss" sustained as a result of subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not increase the amount of insurance in the next "coverage term". With respect to any interruption which begins in one "coverage term" and continues or results in additional "loss" in that subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the interruption began.

(4) This Additional Coverage - Interruption in Computer Operations does not apply to "loss" sustained after the end of the "period of restoration", even if the amount of insurance stated in Paragraph e.(3) of this Additional Coverage has not been exhausted.

f. **Ingress and Egress**

We will pay for the actual loss of "Business Income" you sustain caused by the prevention of existing ingress or egress at a "premises" shown in the Declarations due to direct "loss" by a Covered Cause of Loss at a location contiguous to such "premises". However, coverage does not apply if ingress or egress from the "premises" is prohibited by civil authority.

Ingress and egress coverage for "Business Income" will begin immediately after the time of the direct "loss" and will continue for a period up to 30 consecutive days.

5. **Coverage Extension**

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance. SECTION D. ADDITIONAL CONDITION, 1. Coinsurance does not apply to this Coverage Extension.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000004 of 000010

NOT ORIGINAL DOCUMENT
12/04/2020 10:48:24 AM
38265

## Newly Purchased or Leased Locations

a. You may extend your "Business Income" coverage to apply to property located at:

   (1) New buildings or additions while being built on that part of a "premises";

   (2) Buildings you newly purchase or become required to insure by written contract; or

   (3) Leased buildings or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

This does not apply to property situated at trade shows, fairs or exhibitions.

b. The most we will pay for "Business Income" "loss" under this Coverage Extension is $100,000 at each location described in Paragraph 5.a.

c. Insurance under this Coverage Extension will end when any of the following first occurs:

   (1) This policy expires;

   (2) 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

   (3) 90 days pass from the date you purchase, lease, or become contractually required to insure property described in Paragraphs 5.a.(2) and (3); or

   (4) You report values to us when you acquire your new building or business personal property.

We will charge you additional premium for values reported from the date you purchase or lease the property or begin construction on that part of the building that would qualify as Covered Property.

## SECTION B. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## SECTION C. LOSS CONDITIONS

The following conditions apply in addition to the COMMON POLICY CONDITIONS and the COMMERCIAL PROPERTY CONDITIONS.

1. **Appraisal**

If we and you disagree on the amount of "Business Income" "loss", either may make written demand for an appraisal of the "loss".

In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of "Business Income" "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

2. **Duties in the Event of Loss**

a. You must see that the following are done in the event you have a "Business Income" "loss":

   (1) Notify the police if a law may have been broken.

   (2) Give us prompt notice of the direct "loss". Include a description of the property involved.

   (3) As soon as possible, give us a description of how, when, and where the direct "loss" occurred.

   (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

   (5) As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

   (6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000005 of 000010

NOT ORIGINAL DOCUMENT
12/04/2020 10:48:24 AM
38265-6

request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of "Business Income" "loss" will be determined based on:

**(1)** The Net Income of the business before the direct "loss" occurred;

**(2)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b. Resumption of Operations**

We will reduce the amount of your "Business Income" "loss" to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "premises" or elsewhere.

**c.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for insured "loss" within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**a.** We have reached agreement with you on the amount of "loss"; or

**b.** An appraisal award has been made.

**SECTION D. ADDITIONAL CONDITION**

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS**.

We will not pay the full amount of any "Business Income" "loss" if the Limit of Insurance for "Business Income" is less than:

**a.** The Coinsurance percentage shown for "Business Income" in the Declarations; times

**b.** The sum of:

**(1)** The Net Income (Net Profit or Loss before Income taxes), and

**(2)** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no direct "loss" occurred) by your "operations" at the "premises" for the 12 months following the inception, or last previous anniversary date, of this Coverage Part (whichever is later).

Instead, we will determine the most we will pay using the following steps:

**1.** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this Coverage Part by the Coinsurance percentage;

**2.** Divide the Limit of Insurance for the described "premises" by the figure determined in Step 1.; and

**3.** Multiply the total amount of "loss" by the figure determined in Step 2.

We will pay the amount determined in Step 3. or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable,

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000006 of 000010

shall be deducted from the total of all operating expenses:

1. Prepaid freight - outgoing;

2. Returns and allowances;

3. Discounts;

4. Bad debts;

5. Collection expenses;

6. Cost of raw stock and factory supplies consumed (including transportation charges);

7. Cost of merchandise sold (including transportation charges);

8. Cost of other supplies consumed (including transportation charges);

9. Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

10. Power, heat and refrigeration expenses that do not continue under contract (if Form CP 15 11 is attached);

11. All payroll expenses or the amount of payroll expense excluded (if Form FA 465 is attached); and

12. Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When:   The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at "premises" would have been $400,000.

The Coinsurance percentage is          50%

The Limit of Insurance is          $150,000

"Business Income" "loss" is          $80,000

Step 1:  $400,000 X 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2:  $150,000 ÷ $200,000 = .75

Step 3:  $ 80,000 X .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example No. 2 (Adequate Insurance):**

When:   The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at the "premises" would have been $400,000.

The Coinsurance percentage is          50%

The Limit of Insurance is          $200,000

"Business Income" "loss" is          $80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of "loss").

**SECTION E. OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period of Indemnity**

   a. SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay for "Business Income" "loss" is the lesser of:

      (1) The amount of "Business Income" "loss" sustained during the 120 days immediately following the beginning of the "period of restoration"; or

      (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit of Indemnity**

   a. SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay for "Business Income" "loss" in each period of 30 consecutive days after the beginning of the "period of restoration" is:

      (1) The Limit of Insurance; multiplied by

      (2) The fraction shown in the Declarations for this Optional Coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

NOT ORIGINAL DOCUMENT
12/04/2020 10:48:24 AM

**Example:**

When:   The "Business Income" Limit of Insurance is $120,000

The fraction shown in the Declarations for this Optional Coverage is 1/4

The most we will pay for "loss" in each period of 30 consecutive days is: $120,000 X 1/4 = $30,000.

If, in this example, the actual amount of "Business Income" "loss" is:

| Days | 1-30 | $40,000 |
|------|------|---------|
| Days | 31-60 | 20,000 |
| Days | 61-90 | 30,000 |
|      |      | $90,000 |

We will pay:

| Days | 1-30 | $30,000 |
|------|------|---------|
| Days | 31-60 | 20,000 |
| Days | 61-90 | 30,000 |
|      |      | $80,000 |

The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

   a. To activate this Optional Coverage:

      (1) A Business Income Report/Work Sheet must be on file with the Company and must show financial data for your "operations":

         (a) During the 12 months prior to the date of the Work Sheet; and

         (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

      (2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies. The "Business Income" Limit of Insurance indicated on the Declarations should be at least equal to the Agreed Value, which is determined by:

         (a) The Coinsurance percentage shown in the Declarations; multiplied by

         (b) The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

   b. Except as noted in c. below, the ADDITIONAL CONDITION Coinsurance is suspended until the expiration date of this Coverage Part.

   c. We will reinstate the ADDITIONAL CONDITION Coinsurance automatically

if you do not submit a new Work Sheet and Agreed Value:

      (1) When you request a change in your "Business Income" Limit of Insurance; or

      (2) When you request the coinsurance percentage be changed on the Work Sheet.

   d. If the "Business Income" Limit of Insurance is less than the Agreed Value, we will not pay more of any "loss" than the amount of "loss" multiplied by:

      (1) The "Business Income" Limit of Insurance; divided by

      (2) The Agreed Value.

   **Example:**

   When:   The Limit of Insurance is $100,000

   The Agreed Value is $200,000

   "Business Income" "loss" is $80,000

   Step (a): $100,000 ÷ $200,000 = .50

   Step (b): .50 X $80,000 = $40,000

   We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period of Indemnity**

   In SECTION A. COVERAGE, 4. Additional Coverages, d. Extended Business Income, the number "60" in Subparagraphs (1)(b) and (2)(b) is replaced by the number shown in the Declarations for this Optional Coverage.

**SECTION F. DEFINITIONS**

1. "Business Income" means the:

   a. Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

   b. Continuing normal operating expenses sustained, including payroll.

2. "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

3. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000008 of 000010

year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

(1) The day the policy period shown in the Declarations ends; or

(2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

4. "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

5. "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a coinsurance percentage shown for "Business Income" in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

6. "Loss" means accidental physical loss or accidental physical damage.

7. "Operations" means:

a. Your business activities occurring at the "premises"; and

b. The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

8. "Period of restoration" means the period of time that:

a. Begins at the time of direct "loss"; and

b. Ends on the earlier of:

(1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

c. "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

d. The expiration date of the Coverage Part will not cut short the "period of restoration".

9. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

a. You are regularly or otherwise engaged in activities which taint or degrade the environment; or

b. You use, generate or produce the "pollutant".

10. "Premises" means the Locations and Buildings described in the Declarations.

11. "Rental Value" means "Business Income" that consists of:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

b. Continuing normal operating expenses incurred in connection with that "premises", including:

(1) Payroll; and

(2) The amount of charges, which are the legal obligation of the tenant(s)

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000009 of 000010

FA 212 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 8 of 9

NOT ORIGINAL DOCUMENT
12/04/2020 10:48:24 AM

but would otherwise be your obliga-
tions.

**12.** "Suspension" means:

a. The slowdown or cessation of your busi-
ness activities; and

b. That a part or all of the "premises" is ren-
dered untenantable if coverage for "Busi-
ness Income" including "Rental Value" or
"Rental Value" applies.

**13.** "Valuable papers and records" means in-
scribed, printed or written documents, manu-
scripts or records, including abstracts, books,
card index systems, deeds, drawings, films,
maps, mortgages, or proprietary information.
But "valuable papers and records" does not
mean "money" or "securities" or "electronic
data", including the materials on which the
"electronic data" is recorded.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

FA 212 05 16            Includes copyrighted material of Insurance
                        Services Office, Inc., with its permission.            Page 9 of 9

EXH : 000010 of 000010

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:48:49 AM
38265-6

# EXHIBIT C

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000001 of 000005

Filed       20-CI-006955      12/02/2020        David L. Nicholson, Jefferson Circuit Clerk
                                                        NOT ORIGINAL DOCUMENT
                                                        12/04/2020 10:48:49 AM
                                                        38265-6



## CABINET FOR HEALTH AND FAMILY SERVICES
## OFFICE OF LEGAL SERVICES

**Andy Beshear**
**Governor**

275 East Main Street, 5W-B
Frankfort, KY 40621
502-564-7905
502-564-7573
www.chfs.ky.gov

**Eric C. Friedlander**
**Acting Secretary**

**Wesley W. Duke**
**General Counsel**

### ORDER

March 17, 2020

On March 6, 2020, Governor Andy Beshear signed Executive Order 2020-215, declaring a state of emergency in the Commonwealth due to the outbreak of COVID-19 virus, a public health emergency. Pursuant to the authority in KRS 194A.025, KRS 214.020, and Executive Order 2020-215, the Cabinet for Health and Family Services, Department of Public Health, hereby orders the following directives to reduce and slow the spread of COVID-19:

1. By 5:00 p.m. on March 18, 2020, all public-facing businesses that encourage public congregation or, that by the nature of the service to the public, cannot comply with CDC guidelines concerning social distancing, shall cease all in-person operations.

2. These public-facing businesses that must close include entertainment, hospitality and recreational facilities, community and recreation centers, gyms and exercise facilities, hair salons, nail salons, spas, concert venues, theaters, and sporting event facilities.

3. For the avoidance of doubt, businesses providing food, food processing, agriculture, industrial manufacturing, feed mills, construction, trash collection, retail, grocery and consumer goods, home repair/hardware and auto repair, pharmacy, and other medical facilities, biomedical and healthcare, post offices, insurance, banks, gas stations, laundromats, veterinary clinics and pet stores, warehousing, storage, and distribution, public transportation, and hotel and commercial lodging may remain open, subject to limitations provided in prior



KentuckyUnbridledSpirit.com

An Equal Opportunity Employer M/F/D

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000002 of 000005

Filed       20-CI-006955      12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:48:49 AM
38265-6

orders, but must to the extent practicable implement Centers for Disease Control
guidance, including:

- maintaining a distance of 6 feet between persons;

- ensuring employees practice appropriate hygiene measures, including
  regular, thorough handwashing;

- ensuring that employees who are sick remain home; and

- regularly cleaning and disinfecting frequently touched objects and
  surfaces.

4. Public-facing businesses that remain open shall post the attached sign at all
entrances.

5. The Department of Public Health hereby delegates to local health departments
the authority to take all necessary measures to implement this Order.

The Cabinet for Health and Family Services will monitor these directives continuously and may extend
the directives beyond their current expiration date. The Cabinet will continue to provide information
and updates to healthcare providers during the duration of this Public Health Emergency.

Steven J. Stack, M.D.
Commissioner of Public Health
Department of Public Health
Cabinet for Health and Family Services

Eric Friedlander
Acting Secretary
Governor's Designee

Filed          20-CI-006955          12/02/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:48:49 AM
38265-6

# Do you feel sick?



# If you are sick or have been in the last 24 hours, please DO NOT ENTER.

### To prevent the spread of germs:

- Wash your hands often with soap and water.
- Avoid touching your eyes, nose, and mouth.
- Cover your mouth when you cough or sneeze.
- Avoid close contact with sick people.
- Clean and disinfect frequently touched objects and surfaces.
- Stay home when you are sick.



**CHFS**
KENTUCKY
Cabinet for Health and
Family Services



TEAM
KENTUCKY



Kentucky Public Health
Prevent. Promote. Protect.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000004 of 000005

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:48:49 AM
38265-6

# ¿Se siente enfermo?



# Si está o ha estado enfermo en las últimas 24 horas, por favor NO ENTRE.

**Para prevenir la propagación de gérmenes:**

- Lávese las manos frecuentemente con agua y jabón.
- Evite tocarse los ojos, la nariz y la boca.
- Cúbrase la boca cuando tosa o estornude.
- Evite el contacto cercano con las personas enfermas.
- Limpie y desinfecte los objetos y las superficies que se tocan frecuentemente.
- Quédese en casa cuando esté enfermo.







Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000005 of 000005

Filed      20-CI-006955      12/02/2020      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:09 AM
38265-6

# EXHIBIT D

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000001 of 000003

Filed      20-CI-006955      12/02/2020      David L. Nicholson, Jefferson Circuit Clerk

Filed      20-CI-006955      12/02/2020      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:09 AM
38265-6



### CABINET FOR HEALTH AND FAMILY SERVICES
### OFFICE OF LEGAL SERVICES

**Andy Beshear**
**Governor**

275 East Main Street, 5W-B
Frankfort, KY 40621
502-564-7905
502-564-7573
www.chfs.ky.gov

**Eric C. Friedlander**
**Acting Secretary**

**Wesley W. Duke**
**General Counsel**

## ORDER

### March 19, 2020

On March 6, 2020, Governor Andy Beshear signed Executive Order 2020-215, declaring a state of emergency in the Commonwealth due to the outbreak of COVID-19 virus, a public health emergency. Pursuant to the authority in KRS 194A.025, KRS 214.020, KRS Chapter 39A, and Executive Orders 2020-215 and 2020-243, the Cabinet for Health and Family Services, Department of Public Health, hereby orders the following directives to reduce and slow the spread of COVID-19:

1. All mass gatherings are hereby prohibited.

2. Mass gatherings include any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities.

3. For the avoidance of doubt, a mass gathering does not include normal operations at airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit. It also does not include typical office environments, factories, or retail or grocery stores where large numbers of people are present, but maintain appropriate social distancing.

4. Any gathering, regardless of whether it is a mass gathering prohibited under this Order, shall to the extent practicable implement Centers for Disease Control guidance, including:

   • maintaining a distance of 6 feet between persons;



Filed      20-CI-006955      12/02/2020      David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000002 of 000003

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:09 AM
38265-6

- encouraging good hygiene measures, including regular, thorough handwashing, and providing adequate hygiene materials, including hand sanitizing options;

- encouraging people who are sick to remain home or leave the premises; and

- regularly cleaning and disinfecting frequently touched objects and surfaces.

5. The Department of Public Health hereby delegates to local health departments the authority to take all necessary measures to implement this Order.

The Cabinet for Health and Family Services will monitor these directives continuously and may extend the directives beyond their current expiration date. The Cabinet will continue to provide information and updates to healthcare providers during the duration of this Public Health Emergency.

Steven J. Stack, M.D
Commissioner of Public Health
Department of Public Health
Cabinet for Health and Family Services

Eric Friedlander
Acting Secretary
Governor's Designee

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000003 of 000003

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:24 AM
38265-6

# EXHIBIT E

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000001 of 000008

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:24 AM
38265-6

**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

2020-257
March 25, 2020

## STATE OF EMERGENCY

### Background

The novel coronavirus (COVID-19) is a respiratory disease causing illness that can range from very mild to severe, including illness resulting in death, and many cases of COVID-19 have been confirmed in the Commonwealth.

To help protect our community from the spread of COVID-19, Kentuckians are encouraged to remain Healthy at Home.  By staying home and limiting your in-person contact, you can stop the spread of COVID-19, which endangers public health and safety. If we do not work together to contain the disease, COVID-19 threatens to overwhelm the Commonwealth's healthcare resources.

The Centers for Disease Control and Prevention (CDC) and the Kentucky Department of Public Health have recommended that everyone practice social distancing, meaning staying home when possible and otherwise maintaining six feet of distance from other individuals, to minimize the spread of the disease.  Where people congregate unnecessarily, or fail to follow adequate social distancing practices, they are spreading the disease, creating scenes of an emergency.

The Kentucky Constitution and Kentucky Revised Statutes, including KRS Chapter 39A, empower me to exercise all powers necessary to promote and secure the safety and protection of the civilian population, including the power to suspend state statutes and regulations, and to command individuals to disperse from the scene of an emergency. Under those powers, I declared by Executive Order 2020-215 on March 6, 2020, that a State of Emergency exists in the Commonwealth.

I am now issuing this Order to take additional steps to encourage Kentuckians to remain Healthy at Home, and to do everything in their power to stop the spread of the

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000002 of 000008

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:24 AM
38265-6

**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

2020-257
March 25, 2020

disease.  This Order should be construed broadly to prohibit in-person work that is not
necessary to protect or sustain life.

**Order**

I, Andy Beshear, Governor of the Commonwealth of Kentucky, by virtue of
authority vested in me pursuant to the Constitution of Kentucky and by KRS Chapter 39A,
do hereby Order and Direct as follows:

1.  **Only Life-Sustaining Businesses May Remain Open.**  All businesses that
    are not life-sustaining shall cease operations effective Thursday, March 26,
    2020, at 8:00 p.m., except as needed to conduct Minimum Basic Operations,
    as defined in this Order.  For the purposes of this Order, Life-Sustaining
    Businesses are all businesses that allow Kentuckians to remain Healthy at
    Home, including:

    a.  **CISA List.** All businesses operating in the federal critical
        infrastructure sectors, as outlined at https://www.cisa.gov/identifying-
        critical-infrastructure-during-covid-19.

    b.  **Life-sustaining Retail.**  In-person retail businesses that provide life-
        sustaining goods, consistent with Executive Order 2020-246, as well
        as businesses that supply life-sustaining retail and their administrative
        support operations.  In addition, the following additional categories of
        retail are designated as life-sustaining under this Order:

        i.   hardware stores and businesses that sell electrical, plumbing,
             and heating material;
        ii.  agricultural supply and equipment stores;
        iii. medical product supply and equipment stores; and
        iv.  stores that supply first responders and other critical government
             and healthcare workers.

        The life-sustaining retail stores listed above shall, to the fullest extent
        possible, permit customers to use delivery or curbside service.

    c.  **Food, beverage, and agriculture.** Food and beverage manufacturing,
        production, processing, and cultivation, including farming, livestock,
        fishing, baking, and other production agriculture, including cultivation,
        marketing, production, and distribution of animals and goods for
        consumption; and businesses that provide food, shelter, and other
        necessities of life for animals, including animal shelters, rescues,
        shelters, kennels, and adoption facilities.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000003 of 000008

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:24 AM
38265-6



**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

**2020-257**
**March 25, 2020**

d. **Organizations that provide charitable and social services.**
Businesses and religious and secular nonprofit organizations, including food banks, when providing food, shelter, and social services, and other necessities of life for economically disadvantaged or special populations, individuals who need assistance as a result of this emergency, and people with disabilities. These organizations have a special responsibility to implement social distancing to the fullest extent possible, and to take all necessary actions to stop the spread of disease, including by stopping in-person retail operations.

e. **Media.** Newspapers, television, radio, and other media services.

f. **Gas stations and businesses needed for transportation.** Gas stations and auto-supply, auto-repair, farm equipment, construction equipment, boat repair, and related facilities; bicycle repair shops and related facilities; and motorcycle repair shops.

g. **Financial Services.** Depository institutions, including but not limited to banks and credit unions; Non-depository institutions, including but not limited to consumer, industrial and mortgage loan companies, mortgage loan brokers, originators and processors, deferred deposit, check cashers, and payday lending companies, title pledge lenders, and money transmitters; securities institutions, including but not limited to brokers, agents, advisers and issuers; appraisers, financial markets, bond issuers, or institutions selling financial products to the extent they are providing financial services; and pawnbrokers, to the extent they are providing check-cashing or similar financial services, or to the extent they are selling firearms and ammunition pursuant to Paragraph 9 of this Order.

h. **Housing, Buildings and Construction.** To ensure Kentuckians can remain Healthy at Home, businesses providing construction or maintenance of residential, commercial, or governmental structures, including but not limited to plumbers, electricians, exterminators, cleaning and janitorial staff, security staff, operating engineers, HVAC, painting, landscaping, moving and relocation services, necessary for sustaining the safety, sanitation and operation of structures.

i. **Mail, post, shipping, logistics, delivery, and pick-up services.** Post offices and other businesses that provide shipping and delivery services, and businesses that ship or deliver groceries, food, beverages, goods or services to end users or through commercial channels.

j. **Laundry services.** Laundromats, dry cleaners, industrial laundry services, and laundry service providers.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000004 of 000008

Filed   20-CI-006955   12/02/2020   David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/04/2020 10:49:24 AM
38265-6



**ANDY BESHEAR**

GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

**2020-257**
**March 25, 2020**

k. **Restaurants for consumption off-premises.** Carry-out, delivery, and drive-through food and beverage sales may continue, consistent with the March 16, 2020 Order of the Cabinet for Health and Family Services and the Department of Public Health and the March 19, 2020 Order of the Public Protection Cabinet.

l. **Supplies for Life-Sustaining Businesses.** Businesses that sell, manufacture, or supply other Life-Sustaining Businesses with the support or materials necessary to operate, including computers, audio and video electronics, household appliances; IT and telecommunication equipment; hardware, paint, flat glass; electrical, plumbing and heating material; sanitary equipment; personal hygiene products; food, food additives, ingredients and components; medical and orthopedic equipment; optics and photography equipment; diagnostics, food and beverages, chemicals, soaps and detergent; and firearm and ammunition suppliers and retailers for purposes of safety and security.

m. **Transportation.** Airlines, taxis, transportation network providers (such as Uber and Lyft), vehicle rental services, paratransit, and other private, public, and commercial transportation and logistics providers necessary for Kentuckians to safely remain Healthy at Home, and to access Life-Sustaining Businesses.

n. **Home-based care and services.** Home-based care for adults, seniors, children, and/or people with developmental disabilities, intellectual disabilities, substance use disorders, and/or mental illness, and other in-home services including meal delivery.

o. **Professional services.** Professional services, such as legal services, accounting services, insurance services, real estate services (including appraisal and title services). Professional services firms must implement telecommuting and remote work to the fullest extent possible, and should only use in-person interaction to support Minimum Basic Operations or where telecommuting is impossible.

p. **Manufacture, distribution, and supply chain for critical products and industries.** Manufacturing companies, distributors, and supply chain companies producing and supplying critical products and services in and for industries such as pharmaceutical, technology, biotechnology, healthcare, chemicals and sanitization, waste pickup and disposal, agriculture, food and beverage, transportation, energy, steel and steel products, petroleum and fuel, mining, mineral extraction, construction, national defense, communications, as well as products used by other Life-Sustaining Businesses, or products that can be used to treat or prevent COVID-19.

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000005 of 000008

Filed      20-CI-006955      12/02/2020      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:24 AM
38265-6

**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

2020-257
**March 25, 2020**

    q.  **Critical labor union functions.** Labor Union critical activities including the administration of health and welfare funds and personnel checking on the well-being and safety of members providing services in Life-Sustaining Businesses, provided that these checks should be done by telephone or remotely where possible.

    r.  **Hotels and motels.** Hotels and motels, to the extent used for lodging and delivery or carry-out food services.

    s.  **Funeral services.** Funeral, mortuary, cremation, burial, cemetery, and related services, subject to restrictions on mass gathering and appropriate social distancing.

2.  **Telework Permitted.** The prohibition does not apply to virtual or telework operations.

3.  **Social Distancing and Hygiene Required.** All businesses permitted to operate, including Life-Sustaining Businesses and businesses conducting Minimum Basic Operations, must follow, to the fullest extent practicable, social distancing and hygiene guidance from the CDC and the Kentucky Department of Public Health. Failure to do so is a violation of this Order, and could subject said business to closure or additional penalties as authorized by law. Social distancing and hygiene guidance includes:

    a.  ensuring physical separation of employees and customers by at least six feet when possible;

    b.  ensuring employees practice appropriate hygiene measures, including regular, thorough handwashing or access to hand sanitizer;

    c.  regularly cleaning and disinfecting frequently touched objects and surfaces;

    d.  permitting employees to work from home when feasible; and

    e.  identifying any sick employees and ask theming to leave the premises. Employers are strongly encouraged to offer these employees paid leave.

4.  **Minimum Basic Operations.** Minimum Basic Operations are the minimum necessary activities to maintain the value of the business's inventory, preserve the condition of the business's physical plant and equipment, ensure security, process payroll and employee benefits, facilitate telecommuting, and other related functions.

5.  **Evictions Suspended.** Pursuant to the authority vested in me by KRS Chapter 39A, evictions within the Commonwealth are suspended, and all state, county, and local law enforcement officers in the Commonwealth are directed to cease

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000006 of 000008

Filed      20-CI-006955      12/02/2020      David L. Nicholson, Jefferson Circuit Clerk

Filed          20-CI-006955          12/02/2020          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:24 AM
38265-6

**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

**2020-257**
**March 25, 2020**

enforcement of orders of eviction for residential premises for the duration of the State of Emergency under Executive Order 2020-215. No provision contained within this Order shall be construed as relieving any individual of the obligation to pay rent, to make mortgage payments, or to comply with any other obligation that an individual may have under tenancy or mortgage.

6. **Additional Orders.** The following designees may provide guidance, clarification or modification of this Order to industries or businesses, and may otherwise issue orders necessary to the operation of government during the State of Emergency: the Governor's Executive Cabinet, as set forth in KRS 11.065; the Commissioner of Public Health; the Director of the Division of Emergency Management; and the Director of the Kentucky Office of Homeland Security. Local health departments may take all necessary measures to implement this Order.

7. **In-Person Government Services.** All in-person government activities at the state, county, and local level that are not necessary to sustain or protect life, or to supporting Life-Sustaining Businesses, are suspended.

   a. For purposes of this Order, necessary government activities include activities performed by critical infrastructure workers, including workers in law enforcement, public safety, and first responders. Such activities also include, but are not limited to, public transit, trash pick-up and disposal, activities necessary to manage and oversee elections, operations necessary to enable transactions that support the work of a business's or operation's critical infrastructure workers, and the maintenance of safe and sanitary public parks so as to allow for outdoor recreation.

   b. Any in-person government services that continue must operate consistent with social distancing, as set forth in Paragraph 3 of this Order.

   c. Any statutory deadlines that conflict with the suspension of in-person government activities are hereby suspended during the pendency of this Order.

   d. Nothing in this Order should be interpreted to interfere with or infringe on the powers of the legislative and judicial branches to perform their constitutional duties or exercise their authority.

8. **Prior Orders Remain In Effect.** All prior Executive Orders, and Orders issued by Cabinets pursuant to Executive Order 2020-215, remain in full force and effect, except to the extent they conflict with this Order. For the avoidance of doubt, mass gatherings remain prohibited pursuant to the March 19, 2020 Order of the Cabinet for Health and Family Services and the Department of Public Health. Non-life sustaining retail operations may continue to provide local delivery and curbside service of online or telephone

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000007 of 000008

Filed       20-CI-006955       12/02/2020       David L. Nicholson, Jefferson Circuit Clerk



NOT ORIGINAL DOCUMENT
12/04/2020 10:49:24 AM
38265-6

**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

2020-257
**March 25, 2020**

orders, consistent with Executive Order 2020-246. Violations of these and
other Orders issued pursuant to Executive Order 2020-215 are punishable as
provided in KRS Chapter 39A.

9. **Firearms.** Consistent with KRS 39A.100(1)(h) and (3), nothing in this Order
should be construed to interfere with the lawful sale of firearms and
ammunition. Any businesses engaged in the lawful sale of firearms and
ammunition must follow social distancing and hygiene guidance from the
CDC and the Kentucky Department of Public Health, including: ensuring
physical separation of employees and customers by at least six feet when
possible; ensuring employees practice appropriate hygiene measures,
including regular, thorough handwashing; regularly cleaning and disinfecting
frequently touched objects and surfaces; and ordering sick individuals to leave
the premises. Failure to do so is a violation of this Order, and could subject
said business to closure.

This Order shall be in effect for the duration of the State of Emergency herein
referenced, or until this Executive Order is rescinded by further order or by operation of
law.

ANDY BESHEAR, Governor
Commonwealth of Kentucky

MICHAEL G. ADAMS
Secretary of State

Filed       20-CI-006955       12/02/2020       David L. Nicholson, Jefferson Circuit Clerk

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:46 AM
38265-6

# EXHIBIT F

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000001 of 000004

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:46 AM
38265-6



**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

**2020-968**
**November 18, 2020**

### STATE OF EMERGENCY

The novel coronavirus (COVID-19) is a respiratory disease causing illness that can range from very mild to severe, including illness resulting in death, and many cases of COVID-19 have been confirmed in the Commonwealth.

The Kentucky Constitution and Kentucky Revised Statutes, including KRS Chapter 39A, empower me to exercise all powers necessary to promote and secure the safety and protection of the civilian population, including the power to command individuals to disperse from the scene of an emergency and to perform and exercise other functions, powers, and duties necessary to promote and secure the safety and protection of the civilian population. Under those powers, I declared by Executive Order 2020-215 on March 6, 2020, that a State of Emergency exists in the Commonwealth. The Centers for Disease Control and Prevention (CDC) has concluded that COVID-19 most commonly spreads during close contact between people, and can sometimes be spread through airborne transmission, particularly among individuals in enclosed spaces. As a result, scenes of emergency exist where people gather together, potentially spreading COVID-19.

Kentucky is now experiencing a potentially catastrophic surge in COVID-19 cases, which threatens to overwhelm our healthcare system and cause thousands of preventable deaths. Despite Red Zone Reduction Recommendations, Kentucky is faced with exponential growth of COVID-19 cases.

Accordingly, new public health measures are required to slow the spread of COVID-19. Kentuckians can save lives if they remain Healthy at Home, which will continue to help protect our community from the spread of COVID-19.

### Order

I, Andy Beshear, by virtue of authority vested in me pursuant to the Constitution of Kentucky and by KRS Chapter 39A, do hereby Order and Direct as follows:

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000002 of 000004

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:46 AM
38265-6

**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

**2020-968**
**November 18, 2020**

1. All prior orders and restrictions remain in full force and effect, except as modified below. In particular, all Kentuckians should continue to wear face coverings to protect themselves and others, as set forth in Executive Order 2020-931 (and any order renewing it) and 902 KAR 2:210E. Current guidance and restrictions shall continue to apply to any activity not listed below.

2. This Order does not apply to education, childcare, or healthcare, which operate under separately issued guidance and orders. Current guidance for all entities is available online at the Healthy at Work website (https://govstatus.egov.com/ky-healthy-at-work).

3. These restrictions shall take effect on Friday, November 20, 2020, at 5 p.m. local time, and shall expire on Sunday, December 13, 2020, at 11:59 p.m. local time.

4. <u>Restaurants and Bars.</u> All restaurants and bars must cease all indoor food and beverage consumption. Restaurants and bars may provide delivery and to-go service to the extent otherwise permitted by law. Restaurants and bars may provide outdoor service, provided that all customers are seated at tables, table size is limited to a maximum of eight (8) people from a maximum of two (2) households, and tables are spaced a minimum of six (6) feet apart. For the avoidance of doubt, this restriction applies to indoor dining facilities at retail locations, including food courts. A household is defined as individuals living together in the same home. Additional guidance for outdoor dining is available online at the Healthy at Work website (https://govstatus.egov.com/ky-healthy-at-work).

5. <u>Social Gatherings.</u> All indoor social gatherings are limited to a maximum of two (2) households and a maximum of eight (8) people. A household is defined as individuals living together in the same home.

6. <u>Gyms, Fitness Centers, Pools, and Other Indoor Recreation Facilities.</u> Gyms, fitness centers, swimming and bathing facilities, bowling alleys, and other indoor recreation facilities must limit the number of customers present inside any given establishment to 33% of the maximum permitted occupancy and ensure that individuals not from the same household maintain six (6) feet of space between each other. Indoor group activities, group classes, team practices, and team competitions are prohibited. Notwithstanding 902 KAR 2:210E, Section 2(3)(j), all individuals inside such facilities must wear face coverings at all times, including while actively engaged in exercise. For the avoidance of doubt, this provision does not apply to athletic activities at schools, for which separate guidance will be provided by KHSAA, or athletic activities at institutions of higher education.

7. <u>Venues, Event Spaces, and Theaters.</u> Indoor venues, event spaces, and theaters are limited to 25 people per room. This limit applies to indoor weddings and funerals. For the avoidance of doubt, this limit does not apply to in-person services at places of worship, which must continue to implement

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000003 of 000004

Filed        20-CI-006955        12/02/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/04/2020 10:49:46 AM
38265-6

**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

2020-968
November 18, 2020

and follow the Guidelines for Places of Worship available online at the
Healthy at Work website (https://govstatus.egov.com/ky-healthy-at-work).

8. **Professional Services.** All professional services and other office-based
businesses must mandate that all employees who are able to work from home
do so, and close their businesses to the public when possible. Any office that
remains open must ensure that no more than 33% of employees are physically
present in the office any given day.

9. Nothing in this Order should be interpreted to interfere with or infringe on the
powers of the legislative and judicial branches to perform their constitutional
duties or exercise their authority.

ANDY BESHEAR, Governor
Commonwealth of Kentucky

MICHAEL G. ADAMS
Secretary of State

Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

EXH : 000004 of 000004

| AOC-E-105      Sum Code: CI |  | NOT ORIGINAL DOCUMENT |
| Rev. 9-14 | | 12/04/2020 20-CI-006955 |
| Commonwealth of Kentucky | | 3826 Court: **CIRCUIT** |
| Court of Justice     Courts.ky.gov | | County: **JEFFERSON Circuit** |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plaintiff,* **RENAISSANCE / THE PARK, LLC VS. THE CINCINNATI INSURANCE COM**, *Defendant*

TO:  **THE CINCINNATI INSURANCE COMPANY**
  **6200 S. GILMORE ROAD**
  **FAIRFIELD, OH 45014**

The Commonwealth of Kentucky to Defendant:

  You are hereby notified that **a legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Davis L. Nicholson

Jefferson Circuit Clerk
Date: **12/2/2020**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

  To: _____

☐ Not Served because: _____

  Date: _____, 20____        _____
                              Served By

                              _____
                              Title

Summons ID: @00000962018
CIRCUIT: 20-CI-006955 Long Arm Statute – Secretary of State
RENAISSANCE / THE PARK, LLC VS. THE CINCINNATI INSURANCE COM



Page 1 of 1



Presiding Judge: HON. CHARLES L. CUNNINGHAM (630297)

CI : 000001 of 000001



**Commonwealth of Kentucky**
**David L. Nicholson, Jefferson Circuit Clerk**

NOT ORIGINAL DOCUMENT
12/04/2020 10:50:17 AM
38265-6

| Case #: 20-CI-006955 | Envelope #: 2978290 |
|---|---|
| Received From: JOHN COX | Account Of: JOHN COX |
| Case Title: RENAISSANCE / THE PARK, LLC VS. THE CINCINNATI INSURANCE COM Filed On 12/2/2020 10:35:48AM | Confirmation Number: 117514504 |

| # | Item Description | Amount |
|---|---|---|
| 1 | Access To Justice Fee | $20.00 |
| 2 | Civil Filing Fee | $150.00 |
| 3 | Money Collected For Others(Court Tech. Fee) | $20.00 |
| 4 | Library Fee | $3.00 |
| 5 | Money Collected For Others(Attorney Tax Fee) | $5.00 |
| 6 | Charges For Services(Jury Demand / 12) | $70.00 |
| 7 | Money Collected For Others(Postage) | $18.80 |
| 8 | Money Collected For Others(Secretary of State) | $10.00 |
| 9 | Charges For Services(Copy - Photocopy) | $22.00 |
| 10 | Charges For Services(Attestation) | $0.50 |
| | **TOTAL:** | **$319.30** |

Generated: 12/2/2020

Page 1 of 1