**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CASE NO.: 3:20-cv864-RGJ**

*Electronically Filed*

RENAISSANCE/THE PARK, LLC d/b/a
RENAISSANCE FUN PARK                                                                      PLAINTIFF

V.                             **DEFENDANT'S MEMORANDUM**
                               **IN SUPPORT OF MOTION TO DISMISS**

THE CINCINNATI INSURANCE COMPANY                                                DEFENDANT

Plaintiff seeks property insurance coverage for financial losses it sustained in conjunction with the Coronavirus pandemic. But, Plaintiff's allegations establish that it has not sustained any losses attributable to direct physical loss or damage to property, as required for any coverage under the law, the plain language of the subject Policy, and a substantial body of authority nationally. There are no factual allegations to show government orders or the virus effected any physical change to Plaintiff's property or premises. Instead, Plaintiff alleges that it sustained financial losses when it temporarily closed its recreational facility in response to government orders (the "Orders") and public health concerns in Kentucky.

The Policy supplies property insurance coverage, not financial loss coverage in the absence of direct physical loss to property. The Policy is a contract designed to indemnify physical loss or damage to property, such as in the case of a fire or storm. Coronavirus does not damage property; it hurts people. And, on the issue presented, the controlling law is clear: to survive Cincinnati's motion to dismiss, there must at a minimum be factual allegations showing direct physical loss to property. There are none here. Plaintiff's Complaint relies on a series of legal conclusions, summary allegations unsupported by facts, and allegations that directly contradict the plain language of the Policy and the Orders. These are insufficient to state a plausible claim for relief.

1

## Statement of Facts

### I.    Allegations of the Complaint

The Complaint, which asserts claims for declaratory judgment and breach of contract under

the Policy's Business Income, Extended Business Income, Expenses to Reduce Loss and Civil

Authority coverage parts, includes the following allegations:

- At all times relevant hereto, Plaintiff has owned and operated a recreational facility in the Louisville metropolitan area (the "Renaissance Fun Park"). The facility is located at 201 Park Place Drive, Louisville, Kentucky 40243 and it offers to the public-at-large, year-round, Go-Kart, Laser Tag, Mini-Golf, and Arcade activities, along with food and drink service. [Doc. 1-2 at ¶ 6].

- Plaintiff's premises has likely been infected with COVID-19 and Plaintiff has suffered direct physical loss and/or physical damage at the property. The incubation period for COVID-19 is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020—weeks earlier than previously reported, suggesting that the virus has been circulated in the United States for far longer than previously assumed. It is likely that customers, employees, and/or other visitors to the Renaissance Fun Park were infected with COVID-19 and thereby infected the premises with COMD-19 resulting in direct physical loss or physical damage. [*Id.* ¶ 40].

- To reduce the spread of the disease, the CDC has recommended that businesses clean and disinfect all surfaces, prioritizing the most frequently touched surfaces. [*Id.* ¶ 41].

- On March 6, 2020, Kentucky Governor Andy Beshear signed an Executive Order declaring a State of Emergency in response to the COVID-19 pandemic. [*Id.* ¶ 45].

- These Orders [at Compl. Exhibits C-E] (collectively, the "First Closure Orders") all applied to the Renaissance Fun Park, and required the suspension of its operations. [*Id.* ¶ 49].

- The Renaissance Fun Park did not resume operations until June 12, 2020-three days after they were legally permitted to re-open. [*Id.* ¶ 52].

- On or about November 2020, due to increasing infection rates in and around Kentucky, including Louisville, Governor Beshear signed a new Executive Order mandating that all indoor food and beverage cease. In addition, indoor social gatherings are limited to a maximum of two households and eight people, indoor recreation facilities to 33% of occupancy and six feet of space between people, and indoor venues limited to 25 people. The November 18, 2020 Order is attached as **Exhibit F** (the "Second Closure Order"). [*Id.* ¶ 57].

- As a result of such Order, Renaissance Fun Park is unable to offer food and beverages indoor, nor is it able to use its laser tag facility as it requires virtual darkness resulting in an inability of participants to remain six feet apart as required by the Second Closure Order. [*Id.* ¶ 58].

## II.    Policy

### A.    The Insurance Policy at Issue

Cincinnati issued a policy of insurance to Renaissance Development, Policy No. EPP 010 03 79, effective from July 30, 2018 to July 30, 2021 ("the Policy").[1] For present purposes, the pertinent parts of the Policy are form FM 101 05 16 and form FA 212 05 16. [Policy at 48-86 & 88-96, respectively]. Form FM 101 05 16 is the main property coverage form. Form FA 212 05 16 supplies Business Income coverage. Using the same language, each form supplies Business Income and Civil Authority coverage, but only if the necessary elements for coverage are satisfied. Only Form FA 212 05 16 provides an additional coverage for Expenses to Reduce Loss, which applies only if the necessary elements for coverage are satisfied.

### B.    The Direct Physical Loss or Damage Requirement

The requirement of direct physical loss or damage to property is a core element in property insurance policies like Plaintiff's. The requirement applies to each of the coverages sought here.[2]

Direct physical loss or damage to the Plaintiff's property is required for Business Income coverage in the Policy:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

---

[1] Plaintiff attaches the Policy as Exhibit A to the Complaint. [Doc. 1-2]. A court may consider the contract that is the subject matter of an action on a Rule 12(b)(6) motion. *See Gavitt v. Born*, 835 F.3d 623, 640 (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). **Citations to the Policy page number refer to the ECF-stamped PageID # in the top margin of the Policy.** [Doc. 1-2 (the "Policy")].

[2] Plaintiff's Complaint baldly alleges that insurance policies "sold by Cincinnati, are "all-risk" property damage policies. These types of policies cover all risk of loss except for risks that are expressly and specifically excluded." [Doc. 1, ¶ 13]. But, this is incorrect. The words "all risk" do not even appear in the policy. Instead, under the plain language of the Policy and Kentucky law, Plaintiff must show that ***Covered Cause of Loss*** occurred. Thus, it must show direct ***physical*** loss or damage ***to*** property. *See* Argument, Sect. II., *infra*. And, Plaintiff fails to do so.

[Policy at 65 & 88]. "Loss" is defined as "accidental physical loss or accidental physical damage." [*Id.* at 85]. Accordingly, there is no Business Income coverage unless the insured first establishes that there is direct physical loss or damage to covered property.[3] Furthermore, a Covered Cause of Loss, and thus direct physical loss or damage to property, is an express requirement for *any* coverage under the Policy. [*Id.* at 66 & 89 (Civil Authority)]. Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." [*Id.* at 52].

Further, while the definition of Covered Cause of Loss refers to exclusions, exclusions do not come into play unless there is first direct physical loss to property. Under Kentucky law, insureds have the burden to establish that their claim is covered by the terms of the policy. *N. Am. Acc. Ins. Co. v. White*, 258 Ky. 513, 80 S.W.2d 577, 578 (Ky. 1935). If there is no direct physical loss to property, there is no coverage and the exclusions need not be considered. *See Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002) (explaining that the sole function of an exclusion "is to restrict and shape the coverage otherwise afforded."). Courts throughout the country hold this well-established rule of law precludes coverage where, as here, Plaintiff fails to allege facts demonstrating that the virus or the related government orders caused direct physical loss to property. *See*, Argument, *infra* at Sections II.C. and II.D.

## C.    Additional Requirements for Coverage Under the Policy

The Civil Authority coverage also requires, among other things, damage to property other than the insured's property. Additionally, the civil authorities must issue orders prohibiting access to the insured's property as a result of such damage. [Policy at 66 & 89].

---

[3] Plaintiff's claims for Expenses to Reduce Loss (Policy at 88) and Extended Business Income (Policy at 67 & 89) require that the Business Income coverage part be satisfied first. Thus, while elements unique to the Expenses to Reduce Loss and Extended Business Income coverage may also be unsatisfied or preclude coverage, the Plaintiff's failure to state a claim for Business Income coverage necessarily forecloses any claim for Expenses to Reduce Loss and for Extended Business Income.

Plaintiff also seeks coverage for Extended Business Income (Policy at 67 & 89) and Expenses to Reduce Loss (Policy at 88–89), which both require that the Business Income coverage part be satisfied first. Thus, the Plaintiff's failure to state a claim for Business Income coverage necessarily forecloses any claim for Extended Business Income and Expenses to Reduce Loss.[4]

## Argument

### I.  Motion to Dismiss Standard

Dismissal is appropriate here because this motion presents a pure question of law and contract interpretation. This motion should prevail if, after the Complaint's ***factual*** allegations are taken as true and all reasonable inferences are made in favor of the Plaintiff, the Plaintiff cannot prove facts supporting its claim. *See* Fed.R.Civ.P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, the factual allegations in a complaint must set forth "a plausible entitlement to relief." *Twombly*, 550 U.S. at 557-59. The complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Failure to include plausible factual allegations for all material elements necessary for recovery warrants dismissal. *Id*. Additionally, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Similarly, a court "is not bound to accept unwarranted factual inferences." *Booker v. GTE.net LLC*, 350 F.3d 515, 519 (6th Cir. 2003).

Additionally, because the Court considers the ***factual*** allegations of the complaint and its

---

[4] There are other requirements for the Policy's Civil Authority, Extended Business Income and Expenses to Reduce Loss coverages that Cincinnati does not rely on for this Motion. Cincinnati does not waive the right to later raise them.

exhibits, the Court should consider the insurance Policy and the Orders attached to the Complaint. *Gavitt*, 835 F.3d at 640. Likewise, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc, v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Gavitt*, 835 F.3d at 640; *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999).

Finally, where the Complaint's allegations conflict with the terms of the Policy and Orders, the terms of the Policy and the Orders control. *See, e.g*., Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1327 & n. 22 (4th ed.) ("It appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.") (collecting cases).[5] Thus, the Court should not accept as true any allegations that conflict with the Policy and the Orders.

## II.     There Is No Direct Physical Loss Or Damage To Property

### A.     The Plain and Unambiguous Language of the Policy Requires Direct *Physical* Loss or Damage To Property.

A federal court sitting in diversity must evaluate applicable Kentucky law. *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017) (citing *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000)). Parties to an insurance contract have the right to agree on the specific risks that the contract will cover and the courts will not rewrite the contract. *N. Am. Acc. Ins. Co.*, 80 S.W.2d at 578. Courts look to the language of the contract to determine the parties' intention. *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006), *as modified on denial of reh'g* (Mar. 22, 2007). "Where the terms of an insurance policy are clear and

---

[5] When a complaint quotes only part of a document, the full text is properly considered in deciding a Rule 12 motion. *See, e.g.*, *Gavitt*, 835 F.3d 623, 640 (citing *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

unambiguous, the policy will be enforced as written." *Kemper*, 82 S.W.3d at 873; *Cadleway Props., Inc. v. Bayview Loan Servg., LLC*, 338 S.W.3d 280, 286 (Ky. App. 2010) ("An unambiguous written contract must be strictly enforced according to the plain meaning of its express terms and without resort to extrinsic evidence."). According to the Supreme Court of Kentucky, a "policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract . . . [and] courts should not rewrite an insurance contract to enlarge the risk to the insurer." *Unltd. Marine, Inc. v. Empire Indem. Ins. Co.*, 2012 WL 1015458 at *7 (W.D. Ky. 2012) (quoting *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226–27 (Ky. 1994)).

Plaintiff admits that direct physical loss or damage to property is required for any coverage under the Policy. [Doc. 1-2 at ¶¶ 14-16]. This requirement is plainly stated throughout the Policy and these words are not ambiguous. [Policy at 50, 52, 65, 66, 85, 88, 89, 95]. And, courts throughout the country hold that these words are not ambiguous. *See* Argument, Sect. II.C, *infra*. As such, the Policy must be applied as written.

### B.    Plaintiff's Complaint Fails to State a Claim for Coverage Under the Policy.

Plaintiff does not allege facts showing any direct physical loss to its property. Instead, it asserts a series of summary allegations and legal conclusions, devoid of factual support. [Doc. 1-2 at ¶¶ 50-56; 58–59; 66–78, 94–99, 101–106]. But, as *Iqbal*, *Twombly*, and those others cited above make clear, these types of allegations are not accepted as true and are not sufficient to show a plausible claim for relief. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (labels and conclusions, a formulaic recitation of the elements of a cause of action, or tender of naked assertions devoid of further factual enhancement do not suffice); *Booker*, 350 F.3d at 519 (same).

For example, Plaintiff summarily asserts that, "Plaintiff's premises has likely been infected with COVID-19 and Plaintiff has suffered direct physical loss and/or physical damage at the

property." [Doc. 1-2 at ¶ 40]. But, even assuming this allegation were true, there are no factual allegations to show that Coronavirus *was* present at Plaintiff's premises or that Covered Property was physically damaged by the virus. Further, Plaintiff alleges it is likely people infected with the Coronavirus were at its premises only because COVID-19 "circulated in the United States". [*Id.*].

Similar allegations regarding the *risk* of COVID-19 at premises have been held insufficient to demonstrate physical damage. *Kessler Dental Assocs., P.C. v. The Dentists Ins. Co.*, 2020 WL 7181057 at *4 (E.D. Pa. Dec. 7. 2020); *see also K D Unlimited Inc. v. Owners Ins. Co.*, 2021 WL 81660 at *5 (N.D. Ga. Jan. 5, 2021); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 2020 WL 6436948 at *5 (S.D.W. Va. Nov. 2. 2020) ("There is a similar risk of exposure to the virus in any public setting, regardless of artful pleading as to the likelihood of the presence of the virus.").

If a likelihood of damage and the risk of COVID-19 entering Covered Property were sufficient to cause physical loss to property, every property, everywhere in the world, would have sustained (and will continue to sustain) direct physical loss, unless and until every disease-causing contagion is eradicated from the Earth. Plainly, such a construction is untenable, unsustainable for the business of insurance, and simply defies common sense.[6]

Rather than support Plaintiff's claim, Plaintiff's allegations only highlight the very reason why it does not allege that it is entitled to coverage under the Policy: COVID-19 does not cause physical loss to property. It hurts people. So too, the Orders do not cause physical loss to property. They were intended to keep people safe by keeping them separated. [Doc. 1-2 at ¶ 46 & p. 98]. Plaintiff admits that it reopened its business on June 12, 2020, despite the ongoing pandemic. [*Id.* ¶ 52]. This shows that the virus and the Orders do ***not*** cause ***physical*** loss to property.

---

[6] As shown below, several courts addressing similar arguments immediately recognized that such a construction of property insurance policies, like Plaintiff's Policy, would constitute a "sweeping expansion of insurance coverage without any manageable bounds." *See, e.g.*, *Plan Check Downtown III, LLC v. Amguard Ins. Co.*, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020); *and see* Argument, Sect. II.C.3, *infra*.

Plaintiff summarily asserts that "any COVID-19 particles causes direct physical harm, direct physical damage, and/or direct physical loss to property" and that the presence of people infected with COVID-19 do the same. [*Id.* ¶¶ 37-39]. But, this conclusory allegation is belied by the Orders themselves that describe COVID-19 as "a public health emergency" and permitted businesses that could comply with CDC guidelines and specific types of businesses to remain open. [*Id.* 98-99]. Moreover, even if true, the Complaint fails to allege any facts to show the virus or the Orders caused physical loss to property, as required for any coverage under the Policy.

As alleged in the Complaint, Cincinnati sent Plaintiff a letter on May 29, 2020, explaining the bases for declination of coverage that are set out above. [*Id.* ¶ 61]. It is eminently reasonable to assume that armed with this knowledge, Plaintiff would include allegations to show direct physical loss, if it could do so. There are none. Thus, the only reasonable inference is that there was no direct physical loss or damage to property.

### C. Courts Throughout The Country Correctly Hold Direct Physical Loss Requires Tangible Alteration to Property.

#### 1. An Overwhelming Body of Directly Applicable Authorities Hold the Virus and Orders Do Not Cause Direct Physical Loss to Property as Required by a Policy Like Plaintiff's.

It is black-letter law in Kentucky, and throughout the country, that where the terms of an insurance policy are unambiguous, the policy must be applied as written. A substantial body of authorities throughout the United States have examined claims that are factually the same or analogous to Plaintiff's claim here. With near unanimity, these courts hold that policies, like Plaintiff's Policy here, ***unambiguously*** require that there be tangible alteration to property in order to fulfill the requirement of direct physical loss to property. And, in the following cases, and all those cited in this brief, courts dismiss the respective complaints because the virus and the Orders are doing no such thing. *See, e.g.*, *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, No. 2:20-CV-862,

2021 WL 147139 (W.D. Pa. Jan. 15, 2021); *Adrian Moody v. The Hartford Fin. Grp., Inc.*, No.
CV 20-2856, 2021 WL 135897 (E.D. Pa. Jan. 14, 2021); *Kevin Barry Fine Art Assocs. v. Sentinel
Ins. Co., Ltd.*, No. 20-CV-04783-SK, 2021 WL 141180 (N.D. Cal. Jan. 13, 2021); *Palmdale
Estates, Inc. v. Blackboard Ins. Co.*, 2021 WL 25048 (N.D. Cal. Jan. 4, 2021); *Edison Kennedy,
LLC v. Scottsdale Ins. Co.*, 2021 WL 22314 (M.D. Fla. Jan. 4, 2021); *Tappo of Buffalo, LLC v.
Erie Ins. Co.*, 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020); *Sun Cuisine, LLC v. Certain
Underwriters at Lloyd's London*, 2020 WL 7699672 (S.D. Fla. Dec. 28, 2020); *1210 McGavock
Street Hospitality Partners, LLC v. Admiral Indem. Co.*, 2020 WL 7641184 (M.D. Tenn. Dec. 23,
2020); *Emerald Coast Rests., Inc. v. Aspect Spec. Ins. Co.*, 2020 WL 7889061 (N.D. Fla. Dec. 18,
2020); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 2020 WL 7495180 (N.D. Cal. Dec. 21,
2020); *Santos Italian Café LLC v. Acuity Ins. Co.*, 2020 WL 7490095 (N.D. Ohio Dec. 21, 2020);
*10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020);
*Kirsch v. Aspen Am. Ins. Co.*, 2020 WL 7338570 (E.D. Mich. Dec. 14, 2020); *SA Palm Beach LLC
v. Certain Underwriters at Lloyd's London*, 2020 WL 7251643 (S.D. Fla. Dec. 9, 2020); *El Novillo
Rest. v. Certain Underwriters at Lloyd's London*, 2020 WL 7251362 (S.D. Fla. Dec. 7, 2020);
*Palmer Holdings & Invs., Inc. v. Integrity Ins. Co.*, 2020 WL 7258857 (S.D. Iowa Dec. 7, 2020);
*Zwillo V, Corp. v. Lexington Ins. Co.*, 2020 WL 7137110 (W.D. Mo. Dec. 2, 2020); *Whiskey River
on Vintage, Inc. v. Ill. Cas. Co.*, 2020 WL 7258575 (S.D. Iowa Nov. 30, 2020); *Selane Prods., Inc.
v. Cont'l Cas. Co.*, 2020 WL 7253378 (C.D. Cal. Nov. 24, 2020); *Long Affair Carpet & Rug, Inc.
v. Liberty Mut. Ins. Co.*, 2020 WL 6865774 (C.D. Cal. Nov. 12, 2020); *Brian Handel D.M.D., P.C.
v. Allstate Ins. Co.*, 2020 WL 6545893 (E.D. Pa. Nov. 6, 2020); *Raymond H Nahmad DDS PA. v.
Hartford Cas. Ins. Co.*, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020); *Mark's Engine Co. No. 28
Rest., LLC v. The Travelers Indem. Co. of Conn.*, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020);

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020), *motion to amend Compl. denied at* 2020 WL 5847570; *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020), *dismissing Compl. at* 2020 WL 5742713; *10E, LLC v. Travelers Indem. Co. of Conn.*, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020), *dismissing Second Am. Compl. at* 2020 WL 6749361; *Malaube, LLC v. Greenwich Insurance Co.*, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020).

For example, the United States District Courts for the Northern District of Florida, the District of Kansas, the Eastern District of Pennsylvania, the Northern District of Illinois, the Southern District of West Virginia, the Southern District of Iowa, and the Northern District of Texas, have all recently granted Cincinnati's motions to dismiss Coronavirus coverage complaints. Each of the insurance policies at issue in those cases contained the same or substantively identical language as Plaintiff's Policy here. *See Webb Dental Assocs. DMD PA v. The Cincinnati Indem. Co.*, No. 1:20-cv-250-AW-GRJ (N.D. Fla. Jan. 15, 2021)[7] ("So the policy's plain, unambiguous language indicates the property must suffer an 'accidental physical loss or accidental physical damage,' . . . before any business income loss is covered."); *Promotional Headwear Int'l v. The Cincinnati Ins. Co.*, 2020 WL 7078735, *6 (D. Kan. Dec. 3, 2020) ("[T]he overwhelming majority of cases to consider business income claims stemming from COVID-19 with similar policy language hold that 'direct physical loss or damage' to property requires some showing of actual or tangible harm to or intrusion on the property itself."); *4431, Inc. v. Cincinnati Ins. Cos.*, 2020 WL 7075318 (E.D. Pa. Dec. 3, 2020); *T & E Chicago LLC v. The Cincinnati Ins. Co.*, 2020 WL 6801845 at *4 (N.D. Ill. Nov. 19, 2020) ("there are a multitude of cases [that] interpret policy

---

[7] A copy of the Order Granting Motion to Dismiss entered in *Webb Dental* is attached at Exhibit A.

provisions [requiring direct physical loss or damage] as not providing coverage for COVID-19-related losses."); *Uncork*, 2020 WL 6436948 (S.D.W. Va. Nov. 2, 2020); *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.,* 2020 WL 5946863 (N.D. Tex. Oct. 7, 2020) (dismissal upon finding restaurants plaintiffs' "factually conclusory and/or legal conclusions . . . are . . . inadequate to plead a plausible claim" for coverage under the policy);[8] *Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020); *Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020), *denying leave to file Second Am. Compl. and to reconsider at* 2021 WL 83758.

To illustrate, *Promotional Headwear* dismissed a claim for lost business income and civil authority coverage, among others, under a policy like Plaintiff's. 2020 WL 7078735 at *2. The insured argued that it satisfied the direct physical loss requirement by alleging loss of access or use of property. *Id.* at *4. In a thorough opinion, the court held that "'direct loss to Covered Property' under the Policy unambiguously requires more than mere diminution in value or impairment of use of the property." *Id.* at *7. Allegations asserting that the virus had "likely" been present at the insured premises did not satisfy *Twombly*, *id.* at *8 & n.69, nor would the presence of the virus constitute physical loss or damage because the virus can be cleaned, *id.* at *8. "Plaintiff seeks purely economic damages associated with the suspension of its operations due to COVID-19; it does not claim property damage due to the presence of COVID-19 in its buildings." *Id.*

Like Plaintiff's claims here, *4431, Inc.* also involved the COVID-19 pandemic's impact on food service operations. 2020 WL 7075318 at *1. The *4431, Inc.* plaintiffs made the same claims under an identical policy as here. The court rejected their arguments and held that the impact of

---

[8] Plaintiffs in *Vandelay* filed an amended complaint Nov. 4, 2020. That complaint is not materially different from the one already dismissed. Thus, Cincinnati moved to dismiss it, asserting the same reasons as were initially victorious.

the Coronavirus and government restrictions are not *physical* loss or damage to the insureds'
property. *Id.* at *10. Because no physical alteration caused the alleged loss here, and because
Plaintiff could operate take-out and delivery services,[9] there was no direct physical loss or
prohibited access to property. *Id.* at *12–*13.

 *T & E Chicago* concerned a claim for business income, extra expense, and civil authority
coverages by a tavern that was temporarily required to close by reason of virus-related orders. The
policy in *T & E Chicago* contains the same language as the Policy at issue here. *T & E Chicago*
discusses the extensive and ever-growing body of authorities nationwide that support dismissal in
this case. And, it finds that the plaintiff's purely financial loss resulting from its "loss of use of
property without any physical change to that property cannot constitute direct physical loss or
damage to the property." 2020 WL 6801845 at *5.

 *Uncork* involved a non-essential business, required by government orders to temporarily
cease on-premises operations. *Uncork* rejects the same arguments Plaintiff makes here. It finds
that, *even if present*, the virus does not physically damage property as required for any coverage
under the unambiguous language of the policy. 2020 WL 6436948 at *4–*5. And, it finds
"[p]roperty, including the physical location of [the insured], is not physically damaged or rendered
unusable or uninhabitable" as a result of the virus or the orders. *Id*.

 *Webb Dental*, *Oral Surgeons* and *Sandy Point* involved dental offices alleging financial
losses due to virus-related orders temporarily banning elective dental procedures. Cincinnati
argued that the plaintiffs' respective claims for financial losses, absent any actual, demonstrable
change to their property, failed to show direct physical loss or damage to property as required for

---

[9] Plaintiff alleges that November 18, 2020 Executive Order restricted its indoor food and beverage services. Compl.
¶¶ 57-58. That Executive Order and those preceding it permitted food and beverage delivery and to-go services.
Compl. Ex. F at Sections 1, 4.

any coverage under those policies. All courts agreed. *Webb Dental*, No. 1:20-cv-250-AW-GRJ at 3-4 ("Webb Dental seems to acknowledge [the Policy's] physical-injury limitation; its theory is that when local orders forced it to limit operations, it sustained a 'physical loss.' . . . Webb Dental acknowledges there has been no physical damage to the property. That is enough to doom its claim."); *Oral Surgeons*, 2020 WL 5820552 at *1 ("Recent [c]ases cited by Cincinnati have held that virus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance. The few contrary cases cited by [Oral Surgeons] are distinguishable on their facts and not as well analyzed as the many authorities cited by Cincinnati."); *Sandy Point*, 2020 WL 5630465 at *2 ("The critical policy language here–'direct physical loss'–unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage.").

### 2. The Coronavirus Decisions are Consistent with the Established, Prevailing Law Nationally.

Importantly, the recent Coronavirus coverage decisions join a long line of authorities throughout the country, concerning a variety of types of claims and interpreting the same or similar policy language. All require that there be a physical alteration of property. None permits financial loss absent actual alteration of property to comply with the necessity of direct physical loss. *See, e.g.*, *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868 (11th Cir. 2020) (discussing the law regarding direct physical loss); *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834 (8th Cir. 2006); *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613 (8th Cir. 2005); *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 44 (2nd Cir. 2003) (explaining that the requirement of direct physical loss "strongly implies that there was an initial satisfactory state that was changed . . . into an unsatisfactory state"); *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 978–979 & n. 4 (D. Kan. 2016); *NE. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022 at *5 (N.D. Ga. 2014) ("The court will not expand 'direct

physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *Ashland Hosp. Corp. v. Affiliated FM Ins. Co.*, 2013 WL 4400516 at *2 (E.D. Ky. 2013) (recognizing that direct physical loss requires physical alteration of property); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766 (2010); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, 2007 WL 9775576 (S.D. Miss. 2007); *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005); *Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 114 Cal. App. 4th 548, 556–57 (2003), *as modified on denial of reh'g* (Jan. 7, 2004); *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249 (N.C. Ct. App. 1997); 10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property").

In *Source Food*, the insured, Source Food, was a U.S.-based supplier of beef products that sourced its beef production to a single supplier in Canada. 465 F.3d at 385. The U.S. government prohibited the importation of Canadian beef after a cow tested positive for mad cow disease. *Id*. Source Food lost a truckload of beef, which was not itself contaminated, when its Canadian supplier's truck could not cross the border into the United States. *Id*. As a result, Source Food could not obtain the beef required to fill its orders and lost its most valuable customer when it was unable to deliver the required one to two truckloads of beef per week. *Id.*

Source Food claimed lost business income, arguing that "the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were

physically contaminated by mad cow disease and lost its function." *Id.* at 836. Thus, it could not be imported and sold. The Court rejected this argument: "To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Id.* at 838. The claimed loss was an economic loss, not a physical loss to property.

To the same effect are *Pentair*, 400 F.3d at 616 and *MRI Healthcare*, 187 Cal. App. 4th at 779. *Pentair* rejects the plaintiff's contention that its suppliers' inability to function after a loss of power constituted direct physical loss. *Id.* at 616. *Pentair* holds that loss of use or function could potentially be relevant to determining the amount of loss, **but only after an insured first establishes direct physical loss**. *Id.* Similarly, M*RI Healthcare* holds that "detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of property" is not covered policies requiring direct physical loss. *Id.* at 779 (internal quotations omitted). "A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *Id.*

Applying these same standards, courts find there is no physical loss where property merely needs to be cleaned. *See, e.g.*, *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 572 & n. 7 (6th Cir. 2012) (mold and bacterial contamination did not constitute "direct physical loss or damage" because the allegedly affected property (tapes) "merely required cleaning.").

Likewise, the Eleventh Circuit recently affirmed that direct physical loss requires an actual alteration or change in property. *Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x 868 (11th Cir. 2020). There, the insured submitted a claim for business losses from dust and debris generated by construction that migrated into its restaurant. *Id.* at 871. The insured undertook daily cleaning

using normal cleaning methods with over-the-counter cleaning products. *Id.* Customer traffic decreased during the construction. *Id.* at 872. The claimed losses were the cost of cleaning and lost business income. *Id.* at 879. *Mama Jo's* holds that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* (citing *Universal Image*, 475 F. App'x at 573; *MRI Healthcare*, 187 Cal. App. 4th at 779; *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319 (Ga. Ct. App. 2003)); *see also Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1144–45 (Ohio Ct. App. 2008) (mold on insured's wood siding did not cause physical loss because it could be removed by cleaning without harming the wood: "Absent any specific alteration of the siding, the [insured's] failed to show that their house suffered any direct physical injury as required by the homeowners' policy.").

As in all these cases, the plain and unambiguous language of the Plaintiff's Policy requires direct *physical* loss or damage *to property*. However, Plaintiff admits that is not what happened here. Indeed, Plaintiff admits the virus can be removed by cleaning. [Doc. 1-2 at ¶ 41].[10] On this fundamental issue, this case cannot be distinguished from any of the authorities requiring actual, tangible, permanent, physical alteration of property in order to satisfy a policy requirement of direct physical loss or damage to property.

### 3. Plaintiff's Proposed Construction is Unworkable and Inconsistent with Basic Tenets of Insurance Coverage and Common Sense.

In its Complaint, Plaintiff alleges that presence of the Coronavirus in Louisville, Kentucky,

---

[10] The Orders Plaintiff relies on and attaches to the Complaint constitute a further admission by Plaintiff that the virus can be removed by cleaning. [Doc. 1-2 at 98–100, 104, 110]. Those Orders reference regularly cleaning and disinfecting objects and surfaces and Centers for Disease Control ("CDC") guidance. The CDC's Phase I Guidelines expressly recognize that the Coronavirus can be wiped off surfaces by cleaning: "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." *See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020), attached as Exhibit B; *see also* CDC, *Cleaning and Disinfecting Your Home*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/disinfecting-your-home.html (accessed January 6, 2021). The CDC Guidelines are public records. As such, this Court may consider the Guidelines without converting Cincinnati's motion to a motion for summary judgment. *Gavitt*, 835 F.3d at 640; *Greenberg*, 177 F.3d at 514.

its likely presence at Plaintiff's premises, and the government's response to the virus have caused direct physical loss or damage to its property and to others' property, thereby entitling Plaintiff to coverage. [Doc. 1 at ¶¶ 32–34, 40, 44, 53, 57–59]. When viewed through the lens of common sense and basic tenets of property insurance coverage, Plaintiff's proposed construction of its Policy is unworkable because it has no logical end. Again, courts throughout the country agree:

> Ultimately, the Court finds that Plan Check's interpretation is not a reasonable one because it would be a sweeping expansion of insurance coverage without any manageable bounds. . . . [C]onsider the following scenarios: (1) a city changes its maximum occupancy codes to lower the caps, meaning that a particular restaurant can no longer seat as many customers as it used to; (2) a city amends an ordinance requiring restaurants located in residential zones to cease operations between 1:00 a.m. and 5:30 a.m. to expand the window to 12:00 a.m. to 6:00 a.m.; (3) a city issues a mandatory evacuation order to all of its residents due to nearby wildfires (a consequence of this is that all businesses must suspend operations), but lifts the order three weeks later when the wildfires are extinguished without, fortunately, any destruction of property. Under Plan Check's standard, all of these instances would trigger insurance coverage. While Plan Check may believe that that is an appropriate result, the Court is not persuaded. . . . It offers no way, and the Court does not see any way, to limit this coverage.

*Plan Check*, 2020 WL 5742712 at *6 & n.6.[11]

Likewise, *Henry's Louisiana Grill, Inc. v. Allied Insurance Co. of America* finds the plaintiff's interpretation of the contractual language to cover temporary loss of use of its ability to offer on-premises dining "exceeds any reasonable bounds of possible construction, pushing the words individually and collectively beyond what any plain meaning can support." 2020 WL 5938755 at *4 (N.D. Ga. Oct. 6, 2020). Further, it finds:

> [H]olding that the Governor's Executive Order led to a "physical loss of" the dining rooms **would massively expand the scope of the insurance coverage at issue here. . . . The Plaintiffs' construction would potentially make an insurer liable for the negative effects of operational changes resulting from any regulation or**

---

[11] Further, *Plan Check* observes "[t]he manageability issue is not limited to government action, but with anything that interferes with the permitted physical activities on a property. If a building's elevator system had a software bug that temporarily shut down all the elevators, that would clearly interfere with permitted physical activities. Similarly, a snowstorm would interfere with a restaurant's outdoor dining service. And yet Plan Check's interpretation would cover all of these scenarios." *Id.*

***executive decree, such as a reduction in a space's maximum occupancy.***

*Id.* at *5 (emphasis added); *see also Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 2020 WL 6163142 at *7 (S.D. Ala. Oct. 21, 2020) (same).

As *Plan Check, Henry's,* and *Hillcrest* show, Plaintiff's proposed construction of the Policy to cover its purely financial losses is contrary to the Policy language and the very nature of property insurance. Plaintiff's construction is unworkable, untenable and, most importantly, unreasonable.

### D. Construing The Policy Language As A Whole Further Confirms That "Physical" Loss Or Damage Requires A Demonstrable Alteration Of The Property.

Under Kentucky law, insurance policies must be read as a whole and construed without disregarding or inserting words or clauses. *Kemper*, 82 S.W.3d at 875. Here, the Policy's Business Income coverage is limited by its own terms to the "Period of Restoration." The "Period of Restoration" ends on the earlier of: (1) the date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality, or (2) the date when business is resumed at a new permanent location. [Policy at 60–61 & 101].

The repair or replace reference plainly contemplates an actual, concrete, change in property. Because there is no tangible alteration of the Plaintiff's property, there is nothing to repair, rebuild or replace. A litany of courts agree that the definition of "period of restoration" is further proof that there is no direct physical loss absent actual, tangible damage to property:

> It is apparent . . . that a "direct physical loss of property" contemplates the tangible alteration of property which would necessitate a party's absence to fix it or require the party to begin operations elsewhere. The "period of restoration" expressly assumes repair, rebuild or replacement of property. Read in context with "direct physical loss of property," a "period of restoration" can occur only by virtue of a repairable, rebuildable, or replaceable physical alteration of covered property.

*Hillcrest,* 2020 WL 6163142 at *8; *see also Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) (explaining that "repair" and "replace" in

period of restoration clause "contemplate physical damage to the insured premises as opposed to loss of use of it"); *Phila. Parking Auth.*, 385 F. Supp. 2d at 287 (same); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (App. Div. 2002) (same); *Harry's Cadillac*, 126 N.C. App. at 702 (same); *accord Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, No. CV 20-2401, 2021 WL 131556 at *7 (E.D. Pa. Jan. 14, 2021) ("If mere loss of use counted as 'direct physical loss of' property, the 'period of restoration' language would be rendered a nullity."); *4431, Inc.*, 2020 WL 7075318 at *12 n.17; *T & E Chicago*, 2020 WL 6801845 at *5; *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 2020 WL 6562332 at *7 (N.D. Cal. Nov. 4, 2020); *Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.,* 2020 WL 6503405 at *6 (S.D. Miss. Nov. 4, 2020) ("If there is no requirement that physical loss of or physical damage to the property be involved, the definition of [period of restoration] makes no sense."); *W. Coast Hotel Mgmt.*, *LLC v. Berkshire Hathaway Guard Ins. Cos.*, 2020 WL 6440037 at*3 (C.D. Cal. Oct. 27, 2020); *Henry's*, 2020 WL 5938755 at *5–*6; *Sandy Point*, 2020 WL 5630465 at *2; *Malaube*, 2020 WL 5051581 at *7 ("The words 'repair' and 'replace' [in the policy's definition of period of restoration] contemplate physical damage to the insured premises as opposed to loss of use of it"; absent "actual harm" to the property, such terms are rendered "meaningless") (internal citations omitted)*.* Therefore, reading the Policy as a whole, Plaintiff fails to allege a Covered Cause of Loss as required for any coverage under the Policy.

### E. The Lack of a Virus Exclusion Is Irrelevant Because There Is No Direct Physical Loss to Property.

Plaintiff claims coverage exists because the Policy does not contain a virus exclusion. [Doc. 1-2 at ¶¶ 13, 23–27]. That assertion is legally incorrect. The existence of coverage is determined from the insuring agreement and cannot be inferred from the absence of an exclusion. *4431, Inc.*, 2020 WL 7075318 at *13. The court in *4431 Inc.* recognized:

> It is undisputed that there is no virus exclusion. However, Plaintiffs have failed to provide any support for the notion that the absence of an exclusion means that whatever could have been excluded but wasn't is necessarily covered. Even more fundamentally, the issue of exclusions is irrelevant as Plaintiffs' claims do not fall within the scope of the Policies' coverage.

*Id.*; *see also Advance Watch Co. v. Kemper Nat. Ins. Co.*, 99 F.3d 795, 805 (6th Cir. 1996) ("the absence of an exclusion cannot create coverage"); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.,* 2020 WL 7395153 at *3 (E.D. Pa. Dec. 17, 2020).

An exclusion becomes relevant only if Plaintiff first meets its burden of showing there is direct physical loss. *N. Am. Acc. Ins. Co.*, 80 S.W.2d at 578. Indeed, the presence or absence of a virus exclusion is irrelevant where, as here, the insured cannot meet its initial burden to show the virus and related Orders cause direct *physical* loss or damage to property.[12]

For example, the policies in *1 S.A.N.T.*, *Adrian Moody*, *Kessler*, *Long Affair, Handel, Real Hospitality, Nahmad, West Coast Hotel*, *Henry's*, *10E, LLC*, *Pappy's*, *Diesel*, and *Malaube* and other cases **did** contain virus exclusions. But, *1 S.A.N.T.*, *Henry's*, *10E, LLC*, *Pappy's*, and *Malaube* never reach the virus exclusion question because the respective insureds failed to meet their initial burden to allege direct physical loss or damage to property. *Adrian Moody*, *Kessler*, *Long Affair, Handel, Real Hospitality, Nahmad, West Coast Hotel* and *Diesel* likewise dismiss the insureds' complaints for failure to show direct physical loss or damage, identifying the policies' virus exclusions as a secondary, alternative basis for their holding.

Conversely, the policies in *Promotional Headwear*, *4431, Inc.*, *El Novillo*, *T & E Chicago*, *Water Sports*, *Uncork*, *Hillcrest*, *Infinity*, *Sandy Point*, *Oral Surgeons*, *Webb Dental*, *Vandelay*, and *Mudpie*, **did not** contain virus exclusions. Those holdings nevertheless dismiss the complaints, most with prejudice, for failure to allege facts showing direct physical loss to property in the first

---

[12] Cincinnati does not rely on Policy exclusions for purposes of this motion but reserves the right to do so in response to arguments posed by Plaintiff or should the Court deny this motion.

instance. As all of these cases show, the absence of a virus exclusion in the Policy is irrelevant where, as here, there is no coverage in the first instance. *See, e.g.*, *Bluegrass, LLC v. State Auto. Mut. Ins. Co.*, 2021 WL 42050 at *6 (S.D.W. Va. Jan. 5, 2021) ("Having found that coverage has not been triggered by a direct physical loss or damage, I need not analyze whether State Auto properly invoked coverage exclusions for damage caused by viral infections or government ordered loss of use when denying coverage to Bluegrass."); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.,* 2020 WL 7351246 at *9 n.11 (W.D. Tex. Dec. 14, 2020) (same); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 2020 WL 7321405 at *4 (S.D.N.Y. Dec. 11, 2020) (same).

Plaintiff also incorrectly alleges that a 2006 circular by the Insurance Services Offices, Inc. shows "[t]he presence of a virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006." [Doc. 1-2 at ¶ 23]. This argument fails for at least two reasons. First, as shown, Plaintiff does not even allege the virus was present at its premises. More importantly, Plaintiff's purported quotation of the Circular's language is incomplete, misleading, and taken out of context. Read in full, the Circular supports dismissal. *See* Circular at Ex. C. The Circular explains the purpose of the virus exclusion as addressing "concern[s] that insurers . . . may face claims in which there are *efforts to expand coverage* and to create sources of recovery for such losses, *contrary to policy intent*." (emphasis added). Plaintiff's selective quotation of the Circular authorizes the Court to consider its full text without converting the motion to one for summary judgment. *Gavitt*, 835 F.3d at 640; *Greenberg*, 177 F.3d at 514.

### F.   Plaintiff Has Not Stated a Claim for Business Income Coverage and Necessarily Fails to State a Claim for Extended Business Income and Expenses to Reduce Loss

As established above, Plaintiff fails to state a claim for Business Income coverage, as the Complaint fails to allege direct physical loss to property. Because Plaintiff fails to state a claim for Business Income coverage, Plaintiff necessarily also fails to state a claim for the Extended

Business Income and Expenses to Reduce Loss coverages. [Policy at 67, 88–89]. Those require the Business Income coverage be satisfied, which cannot be done without direct physical loss to property. Plaintiff's Complaint fails to state a claim as a matter of law and must be dismissed.

## III.   There Is No Civil Authority Coverage

As shown above, the Civil Authority coverage requires damage to property other than Plaintiff's property. That damage must cause a civil authority to issue an order prohibiting access to the Plaintiff's premises. Plaintiff does not allege any facts to meet these requirements here. The Complaint does not include any factual allegations concerning damage to other property. Rather, Plaintiff's conclusory allegations, unsupported by facts, assert that the Orders "prohibited access to the Renaissance Fun Park" and "triggered the Civil Authority provisions of the Policy." [Doc. 1-2 at ¶¶ 50, 53, 102]. These conclusions fall short of what is required to survive a motion to dismiss under *Iqbal* and *Twombly*. *See also W. Coast Hotel*, 2020 WL 6440037 at *4 ("Besides the generic descriptions of the Executive Orders, Plaintiffs' Complaint contains unsupported statements like "the properties that are damaged are in the immediate area of the [hotels]. ***Plaintiffs simply have recited the coverage criteria set forth in the Policy, and such bare allegations cannot support Plaintiffs' request for declaratory relief***.") (emphasis added; internal citations omitted).

But, even if the Complaint had alleged more than the Policy's bare elements, the virus and the Orders are not causing damage to other property for the same reason they are not causing damage to Plaintiff's property. Courts have upheld the requirement that be actual damage to property to trigger civil authority coverage, not mere loss of use. *See United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 129, 131, 133–34 (2d Cir. 2006); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 440 F. Supp. 3d 520, 529–31 (D.S.C. 2020); *Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*, 2011 WL 13214381 at *6–*7 (E.D. Tex. 2011); *S. Tex. Med. Clinics,*

*P.A. v. CNA Fin. Corp.*, 2008 WL 450012 at *10 (S.D. Tex. 2008); *see also Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 37984 at *5 (E.D. Mo. Jan. 5, 2021) ("Because the orders were preventative and Ballas makes no allegations of damage to neighboring property, I will grant Travelers' motion to dismiss . . . ."); *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2020 WL 7024287 at *4 (E.D. Pa. Nov. 30, 2020) ("[Plaintiff] closed because the Shutdown Orders applied to its own operations. Its shutdown and resulting losses fall outside the scope of the Civil Authority coverage.").

Likewise, the virus and the Orders are not prohibiting access to Plaintiff's premises. Plaintiff admits that it offers food and drink service, [Doc. 1-2 at ¶ 6, 57–58], and the Orders permitted anyone to access the premises for carry-out, drive-through, delivery and food preparation operations. [*Id.* 98, 109, 115]. The Complaint's allegations and the Orders show access to Plaintiff's premises was never prohibited, which is required for coverage. *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700 at *4 (Minn. Ct. App. 2005); *Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL 129229 at *2 (N.D. Cal. 1995); 11A *Couch on Ins.* § 167:15 ("If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable."); *see also Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, 2020 WL 7338081 at *2 (D.N.J. Dec. 14, 2020) ("Plaintiff pleads that by forcing him to close his business, the Stay-At-Home Orders caused Plaintiff to lose income and incur expenses. This is not enough."); *Pappy's*, 2020 WL 5500221 at *6 ("[T]he civil authority coverage provision only provides coverage to the extent that access to Plaintiff's physical premises is prohibited, and not if Plaintiff's are simply prohibited from operating their business."). This Court should find Plaintiff fails to state a claim for Civil Authority coverage.

## **CONCLUSION**

Cincinnati agreed to provide coverage for business income losses while insured property is being repaired, rebuilt or replaced as a result of tangible, physical alteration of property. But, stripped of its factually unsupported, conclusory allegations, legal conclusions, and allegations that directly conflict with the Policy and the Orders, the Complaint shows nothing of the sort happened here. As such, Plaintiff fails to state a plausible claim for relief under the plain and unambiguous language of the Policy and Kentucky law.

Courts from coast to coast have recognized the unfortunate plight of businesses that were either shut down or experienced declines in patronage because of efforts to keep people separated. In granting a dismissal in New Jersey, the U.S. District Court wrote, "Although this Court is sympathetic to the very real losses businesses have suffered during this pandemic, it cannot grant Plaintiff the relief it seeks." *Boulevard Carroll*, 2020 WL 7338081 at *2 & n.2 (collecting cases); *see also T & E Chicago*, 2020 WL 6801845 at *5 ("The Court sympathizes with Plaintiff. Nevertheless, the policy's phrasing requires the Court to find in [Cincinnati's] favor.").

Cincinnati likewise urges the Court to enforce the clear terms of this **property** policy of insurance and dismiss this case with prejudice.

KERRICK BACHERT PSC
1025 State Street
Bowling Green, KY 42101
Phone:  (270) 782-8160
Email:  mcook@kerricklaw.com

*/s/  Matthew P. Cook*
Matthew P. Cook
*Counsel for Defendant, The Cincinnati Insurance Company*

G. David Rubin (*pro hac vice* admission pending)
LITCHFIELD CAVO LLP
2 North Lake Avenue, Suite 400
Pasadena, CA 91101
Tel: (626) 683-1100
rubin@litchfieldcavo.com

25

## **CERTIFICATE OF SERVICE**

This will certify that this pleading was electronically filed using the Court's CM/ECF filing system on this the 22nd day of January, 2021 and that a true and correct copy of same was forwarded by emailed on this date to the following:

John D. Cox
Stefan E. Staloff
Lynch, Cox, Gilman & Goodman, P.S.C.
500 West Jefferson Street, Suite 2100
Louisville, KY 40202
jcox@lynchcox.com
sstaloff@lynchcox.com
*Counsel for Plaintiff*

/s/  Matthew P. Cook
Thomas N. Kerrick
Matthew P. Cook
*Counsel for Defendant, Cincinnati Insurance Company*